Linsley *v.* Hubbard.

REUBEN W. LINSLEY AND OTHERS *vs.* MARY L. HUBBARD AND OTHERS.

Certain real estate was devised to *A* for life, and after her death upon certain contingencies to *B* and others. The General Assembly, upon the petition of *A*, and against the remonstrance of *B* and others, passed a resolution authorizing the sale of the real estate by certain trustees named, and the holding and investing by them of the proceeds for the benefit of all parties interested, according to their respective interests. Held to be constitutional and valid.

BILL for an injunction against the sale of certain real estate under a resolution of the General Assembly; brought to the Superior Court in New Haven County. The following facts were found by the court:

Chauncey Linsley died in the year 1862, owning in fee at the time of his death a certain farm containing about seventy acres of land with an old dwelling house and barn standing thereon, situated in North Branford in New Haven County, and of the value of about four thousand dollars. He left a will, the provisions of which important to the present case are stated in the resolution given below. The respondent, Mary L. Hubbard, is the granddaughter and sole heir at law of said Linsley. Parnel Linsley, his widow, who had the life use of the farm, died in 1874. Mary L. Hubbard has had the full use and enjoyment of the estate since the decease of her grandmother, and is now in possession of the same; she is now thirty-seven years of age, and is unmarried. Her residence is with her father in the town of Guilford, about seven miles from the farm, and she has been and is now supported by her relatives. The farm has not heretofore produced, and is not capable of producing, a net income exceeding one hundred dollars per year.

The petitioners have the contingent interest in the premises which the will gives them, and they are the parties named in the will of Chauncey Linsley, either directly, or as the heirs of the Reuben L. Dudley therein named.

In April, 1875, Mary L. Hubbard brought a petition to the General Assembly for a sale of the farm, which was duly

referred to the joint standing committee on the sale of lands, and the present petitioners appeared in opposition, and with the said Mary were duly heard either in person or by counsel before the committee. The committee made a report in favor of granting the prayer of the petition and recommended the passage of a resolution submitted by them. The resolution so submitted was duly passed by the General Assembly and is as follows:

"Upon the petition of Mary L. Hubbard, of Guilford, showing that she is the granddaughter and only descendant of Chauncey Linsley, late of North Branford, deceased; that by his will, executed March 30th, 1848, and duly probated, he devised to her a life estate in a farm of about seventy acres, situated in North Branford, the farm having sundry buildings thereon; that upon the happening of certain contingencies it is provided by said will that said life estate shall become a fee simple in her and the heirs of her body; that otherwise, upon her decease, the remainder interest in said farm will pass to Reuben W. Linsley of Huntington, Seth H. Linsley of North Branford, Dana B. Page of Westbrook, Wilbur F. Page of Middletown, Daniel R. Page of Fair Haven, Polly Babcock of North Branford, and the heirs-at-law of Reuben L. Dudley, late of Michigan, deceased; that the said farm is now worth about four thousand dollars, but is depreciating in value, and produces but a very small income, if any, to the petitioner; that it is to her interest, and that of those who may have a future title to the property, that the same should be sold and the avails securely invested for their benefit, but that neither she alone, nor all who have a present and future interest, can give a complete title to the estate to any purchaser; and praying this General Assembly to pass a bill providing for a sale of the property and the proper investment of the avails of the sale: and whereas it appears that the said Reuben W. Linsley and Wilbur F. Page came before the proper committee of this Assembly, and were heard in answer to the petition; and that all the other parties having a future interest in the estate had legal notice to appear before this Assembly in answer to the same; and whereas the facts above set forth are found to be true: therefore—

*Resolved by this Assembly:* That Lynde Harrison, of Guilford, and John H. Harrison, of North Branford, are hereby appointed trustees, and they are duly authorized to sell the whole or a part of the said farm, so devised by said Chauncey Linsley to Mary L. Hubbard, and to execute proper deeds of conveyance, which deeds, when delivered, shall convey the whole title to the lands and buildings therein described; and they are authorized at their discretion to sell the same at public or private sale; *provided,* that if the same or any part thereof shall be sold at private sale, the said Reuben W. Linsley shall have the opportunity to purchase the same, if he will offer to said trustees in writing as high a sum of money for the same as may be offered by any other person; but, to avail himself of this provision, he shall make his written offer within ten days after the time when he shall receive notice of the offer of other parties from either of said trustees. The trustees shall keep the avails of such sale or sales, after deducting the costs of this application and said sale, securely invested in first mortgages of real estate situated in the state of Connecticut, or deposited in some incorporated savings bank in this state, and they shall pay the interest or income derived therefrom to the said Mary L. Hubbard, during her natural life, and at her decease they shall pay over the principal to the heirs of her body, if any are then living; otherwise, they shall pay the same to such persons and in such proportions as is provided by said will of Chauncey Linsley for the disposition of his real estate upon the death of Mary L. Hubbard, and they shall then be discharged from their trust. If either or both of said trustees shall decline to act, or if in the future either shall die or resign, the court of probate for the district of Guilford shall fill the vacancies, and said court shall require bonds of said trustees upon the application or any parties interested in said estate, and shall tax the costs that are herein provided to be paid, and shall require said trustees to render an account of all sales and investments of the avails of such sales, and may remove either or both of said trustees for cause. The trustees shall sell said real estate, if at all, within one year from the passage of this resolution."

Upon these facts the case was reserved for the advice of this court.

*W. C. Case*, for the petitioners.

1.   This act is void, because opposed to natural justice, and in violation of the fundamental principles of the social compact.   Rights are older than written constitutions, and bear to those instruments the relation of cause to consequence —not the opposite.   The law never *creates* rights, it merely defines and protects them.   Cooley on Const. Lim., 36, 37, 175; Lieber on Civil Liberty, 103.   The nature of the social compact itself furnishes an inexorable law of limitation on legislative power, entirely independent of constitutional restraints, and it is as much the duty of the judiciary to recognize and enforce this law as any other.   *Calder* v. *Bull*, 3 Dall., 386, 388.   A violation of the right of private property is a violation of that law, and is the illustration invariably used to point the application of the doctrine which we claim.   Sedgw. Stat. & Const. Law, (Pomeroy ed.,) 128; *Taylor* v. *Porter*, 4 Hill, 140; *Goshen* v. *Stonington*, 4 Conn., 225; *Booth* v. *Woodbury*, 32 id., 126; *People* v. *Morris*, 13 Wend., 328; Cooley on Const. Lim., 175.

2.   The act is void, because it is in violation of an implied constitutional restraint upon legislation.   Section 11, article 1st, of the constitution of this state, is: "The property of no person shall be taken for public use without just compensation therefor."   By fair implication this section prohibits the taking of private property for private use, with or without compensation.   The words of that section "should be construed as equivalent to a constitutional declaration that private property, *without the consent of the owner*, shall be taken only for the public use, and then only upon just compensation." Sedgw. Stat. & Const. Law, 447; *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 Conn., 304.

3.   The act is void, because it is a direct and palpable violation of that constitutional guaranty of the rights of private property known as "*due process of law.*"   What is the meaning of this phrase?   In *Taylor* v. *Porter*, before cited, Judge

Bronson says: "It cannot mean less than a prosecution or suit instituted and conducted according to the prescribed forms and solemnities for asserting guilt or determining the title to property. The same measure of protection is extended to life, liberty and property; and if the latter can be taken without a forensic trial and judgment, there is no security for others." If that definition holds in the present case, either the act in question was a usurpation of judicial power, and for that reason alone void, or it was clearly without "due process of law," and for that reason void. Certain it is that the phrase does not mean a statute passed for the purpose of working the wrong complained of. That construction would render the restriction absolutely nugatory and turn this part of the constitution into mere nonsense. The acknowledged principle is, that private property can not be taken for strictly private purposes *without the consent of the owner*, whether compensation be provided or not, except upon forensic trial and judgment. *Taylor* v. *Porter*, 4 Hill, 140, 149, and authorities before cited. Those acts of the legislature authorizing the sale of the land of minors, and other persons not *sui juris*, are not in conflict with this doctrine. The decided cases which sustain those acts stand upon the ground that for persons not *sui juris*, and therefore incapable of consenting, the legislature, as *parens patriæ*, consents; but this reason fails in the case of persons *sui juris*, and therefore the rule itself fails. *Rice* v. *Parkman*, 16 Mass., 326; *Davison* v. *Johonnot*, 7 Met., 388; *Sohier* v. *Mass. Gen. Hospital*, 3 Cush., 483; *Clarke* v. *Hayes*, 9 Gray, 426; *Clarke* v. *Van Surlay*, 15 Wend., 436; *Cochran* v. *Van Surlay*, 20 id., 365, 373. Nor are those statutes which authorize the partition of lands among joint tenants, and the sale of such lands, if sale is necessary to give each tenant his right, inconsistent with this claim. Those statutes are really statutes for the protection and enforcement of the rights of property, and are intended simply to secure to every man the full measure of interest he acquires by his title and no more. Such statutes are held valid because the right of partition is incident to all real estate holden in common, and enters into the very nature

of the title of estates so holden. *Richardson* v. *Monson*, 23 Conn., 97.

4. It can not be said that the petitioners are not in reality deprived of any property by this act, because their interest is contingent, and liable to be defeated by the future happening of a possible event. "It is very certain that the legislature cannot deprive a man of real property in which he has either a vested or a contingent right." Sedgw. Stat. & Const. Law, 152. Our rights are vested, though the remainder is contingent.. Cooley on Const. Lim., 358. Nor because the property is not diverted from the purposes of the testator, but the avails ' of the sale are to be held for the benefit of the petitioners in ·the same manner that the land was. This is not true as a ·matter of fact. An inseparable part of the act appropriates ·a part of the petitioners' property to defraying the expense of the application to the legislature, and of the sale—*taking part of the petitioners' property to pay the expenses of depriving them of the rest.* If an inseparable part of a statute is void for reasons of constitutional restriction, the whole statute is void. *Commonwealth* v. *Hitchings*, 5 Gray, 482; *State* v. *Wheeler*, 25 Conn., 290; *Mobile & Ohio R. R. Co.* v. *The State*, 29 Ala., 573. But the petitioners' rights of property . are none the less violated, even if money, equivalent in value · to' the farm in the judgment of the legislature, is received for the land and held to abide the contingencies contemplated by · the will. What *are* the rights of property? Why, the right to hold *what is indisputably our own*, in any form we please, ·subject to nothing but the public necessity and the adjudicated rights of our fellow-men, and the right to dispose or withhold disposition subject to the same rule. Strike these out, and what is there left worth the solemn guaranty of a written constitution, or worthy to be mentioned as constituting, with the life and liberty of the citizen, the basis of free government. "A statute which, without some controlling public necessity and for public objects, seeks *to affect or interfere with* vested rights of private property, is equally beyond the true limits of the legislative power." Sedgw. Stat. & Const. Law, 151.

5. It remains to consider the argument of inconvenience, which is always urged in cases involving the constitutionality of statutes and other legislative enactments. 1. As a matter of law. If this act is a clear violation of constitutional restraints upon legislation, no argument of inconvenience has any weight. The responsibility is upon the legislature and not upon the judiciary. Sedgw. Stat. & Const. Law., 411. 2. As a matter of fact. The danger to titles to real estate in this state, by reason of holding this act void, is purely imaginary. Our legislature, it is true, has given authority to sell land in a very large number of cases—in cases where the parties in interest were *sui juris*, and cases where they were not. The cases where they were not *sui juris* have been sufficiently remarked upon already. Those where the parties in interest were *sui juris* may be classified as follows:—1st. Cases where it appears on the face of the enactment that all parties in interest joined in the petition.—2d. Cases where the act finds the allegations of the petition true *generally*, and reference to the petition in the secretary's office shows that all parties in interest concurred.—3d. Cases where it appears on the face of the act that some parties in interest were summoned to appear and did not.—4th. Cases where neither the act itself, nor examination of the papers in the secretary's office, discloses whether the parties in interest were all notified and consented or not.—5th. Cases where it appears from the act itself that authority to sell was granted by the legislature without the consent and against the opposition of some of the parties. Those cases where the consent of all parties in interest appears affirmatively are so largely in excess, that it is clear our legislature, *as a rule*, have made consent an indispensable requisite. Cases where neither consent nor opposition appear affirmatively on the record, are hardly exceptions to this rule, for in most of them there was such consent as a matter of fact, and in the rest the legislature presumed it from notice and absence. But of the 5th class, that is, cases where the legislature has authorized sale without the consent and against the opposition of parties in interest, it is confidently believed, after careful research, that the pres-

ent act is the only one ever passed by the legislature of the state of Connecticut. But whether it is the first of its kind or not, we respectfully submit that upon every consideration it ought to be the last.

*L. Harrison* and *J. W. Alling*, contra, cited *Calder* v. *Bull*, 2 Root, 350; *Starr* v. *Pease*, 8 Conn., 548; *Pratt* v. *Allen*, 13 id., 125; *Richardson* v. *Monson*, 23 id., 94; *Rice* v. *Parkman*, 16 Mass., 326; *Davison* v. *Johonnot*, 7 Met., 388; *Sohier* v. *Massachusetts Gen. Hospital*, 3 Cush., 496; *Satterlee* v. *Matthewson*, 2 Peters, 380; *Edwards* v. *Pope*, 4 Ill., 465; *Carroll* v. *Lessee of Olmsted*, 16 Ohio, 257; *Stewart* v. *Griffith*, 33 Misso., 19; *Norris* v. *Clymer*, 2 Penn. S. R., 277; *Blagge* v. *Miles*, 1 Story, 426; *In re Columbian Metal Works*, 3 Bankr. Reg., 75; *Sutherland* v. *Lake Superior Ship Canal Co.*, 9 id., 298; *Holman's heirs* v. *Bank of Norfolk*, 12 Ala., 369, 414; Cooley's Const. Lim., 352.

PARK, C. J. The controversy in this case calls in question the constitutionality of the resolution passed by the General Assembly in the year 1875, authorizing the sale of the land in which the petitioners have a contingent interest, and the investment of the proceeds for the benefit of all parties concerned.

It is said by the petitioners that this resolution deprives them of their interest in the property against their will, and is therefore void, not only as opposed to natural justice, but as in conflict with the provisions of the constitution of the state. It was held by this court in the case of *Richardson* v. *Monson*, 23 Conn., 94, that the statute which authorizes the sale of lands held in joint tenancy, tenancy in common, or coparcenary, whenever partition cannot conveniently be made in any other way, is constitutional. That case was ably discussed by counsel, who offered the same arguments against the constitutionality of the statute, which have been urged upon our consideration against the validity of this resolution. It is difficult to see any distinction in principle between the two cases. When a sale is made of real estate held in joint

tenancy, the tenant opposed to the sale is as much deprived of his estate by the change which is made, as these petitioners are of their property, ·by the change authorized by this resolution. In either case the parties are not subjected to a loss of their property. It is simply changed from one kind of estate to another. In the case of *Sohier* v. *Massachusetts General Hospital*, 3 Cush., 496, the court say, in a case like the present, "The legislature authorizes the sale, taking care that the proceeds shall go to the trustees, for the use and benefit of those having the life estate, and of those having the remainder, as they are entitled under the will. This is depriving no one of his property, but is merely changing real into personal estate, for the benefit of all parties in interest. This part of the resolve therefore is within the scope of the powers exercised from the earliest times, and repeatedly adjudged to be rightfully exercised, by the legislature." In the case of *Rice* v. *Parkman*, 16 Mass., 326, it was held that the legislature might rightfully authorize a tenant for life to sell the whole estate, thus converting real into personal property, provision being made for securing the interests of those in remainder. We think the decision in the case of *Richardson* v. *Monson*, which we have referred to, must be regarded as decisive of this case.

We think the resolution in question constitutional, and not opposed to natural justice; and we therefore advise the Superior Court to dismiss the petition.

In this opinion CARPENTER, PARDEE and LOOMIS, JS., concurred; FOSTER, J., dissented.