NATHAN S. COMSTOCK vs. JEDEDIAH R. GAY.

The issue of a tenant in tail has no strict legal right in the entailed estate until after the death of the tenant in tail. He has only a possibility or expectancy; nothing that the law regards as property.

The legislature has full power to authorize the tenant in tail, in such a case, to convey the property in fee simple, and such a conveyance will bar the right of the issue.

And where a conveyance in fee simple has been made by the tenant in tail without legislative authority, the legislature has full power to afterwards confirm the title in the grantee.

[Argued May 29th—decided July 3d, 1883.]

ACTION to recover the possession of land; brought to the Superior Court. The following facts were found by the court:—

Nathan Comstock, grandfather of the plaintiff, died in 1834, seized of a farm in the town of Montville, upon which he had resided, containing about seventy-five acres. The demanded premises are a part of that farm. By his will he devised this land as follows:—

" I give unto my son, Asa Comstock, * * all my real estate not otherwise disposed of in this will, * * together with the stock and farming tools, after the decease of his mother; and should he not have heirs of his body, then said real estate after his decease to go to my heirs-at-

law." A further provision of the will made it the duty of Asa Comstock to support his brother David, which support was made a condition of the devise.

Asa Comstock, after the death of his mother, and after issue born, being advised that he took the land under the will in fee simple, sold and conveyed in fee simple by warranty deeds, dated August 3d, 1847, and April 4th, 1848, about thirty acres of the farm to William Bolles, and, in 1849, by a like deed, the residue to Jesse Comstock. Bolles and Jesse Comstock were *bonâ fide* purchasers, and paid full value for the lands. By warranty deeds, dated December 7th, 1849, and December 29th, 1855, Bolles conveyed to the defendant the land described in the complaint, being about thirteen acres.

The whole amount received by Asa Comstock for the farm was $3,700—its full value at that time. On the 12th of March, 1849, Asa bought another farm in Montville of Peter R. Strickland, paying therefor $2,200 out of the money he had received from the sale of the land devised to him. The Strickland farm was, however, worth no more than from $1,800 to $2,000, at that time. Asa died intestate on the 13th of February, 1876. The plaintiff is his only child and heir.

The railroad now known as the New London Northern Railroad was laid out and built in the years 1848–1850 across that part of the Nathan Comstock farm which was sold to Bolles. The depot and all the railroad buildings are placed upon it, besides other buildings and improvements of great value. The defendant enclosed his land in severalty soon after he bought it, and has ever since been in the exclusive possession, claiming it as his own and keeping all others out. He laid out about two acres of it for a family cemetery, and has erected thereon a monument at an expense of $1,500, and there are now eight persons of the defendant's kindred buried in the cemetery lot.

In 1854 the Supreme Court held that Asa Comstock took only an estate for life in the land. *Comstock* v. *Comstock*, 23 Conn. R., 349. After this decision application was made

to the General Assembly at its session in May, 1855, by
Asa Comstock and others who had taken titles under him,
for the passing of an act validating the conveyances made
by him and confirming the title in his grantees; and at that
session the following resolution was passed,—the preamble
stating the facts and among other things that the petitioners
were the only persons then interested in the lands:—

"*Resolved, ordered and decreed by this Assembly*, That
upon the said Asa Comstock giving a bond to the judge of
the court of probate for the district of Montville and his
successors in office, secured by mortgage or other security
satisfactory to said court, conditioned to provide for the
maintenance, care and support of his brother, David Com-
stock, in a manner equal in all respects to the requirements
of said will; and, further, to hold the money or the property
received as the consideration of the conveyances by him
made as aforesaid, namely, the said amount of thirty-seven
hundred dollars, in trust for parties who might otherwise
be entitled to receive the land under said will; then the
said deeds so as aforesaid given to the said Gideon Palmer
and William Bolles, the deed to Henry McNeil, Mary Ann
McNeil, and Frances A. McNeil, and the deed to Jesse
Comstock, be confirmed and established, and the titles
which the same purport to convey to the parties respect-
ively be confirmed and established in the parties aforesaid
respectively, their heirs and assigns forever, as a good and
indefeasible title in fee simple as against the heirs of the
body of the said Asa Comstock, and any and all persons
now in existence, or who may hereafter come into existence,
who in any event might be interested in or have any estate,
right, title or interest in or to the lands so conveyed to the
parties aforesaid respectively."

Pursuant to this resolution Asa Comstock gave his bond,
with a mortgage to secure it, to the judge of probate for
the district of Montville for the proper support of his
brother, David Comstock, and for the holding of the
$3,700 received as the price of the lands devised to and

sold by him in trust for the parties who would have been entitled to receive the lands under the will.

The plaintiff was born in Montville, in the year 1835, while his father lived on the Comstock farm, and has always lived in that town, except that he went on a whaling voyage some time in the year 1853, and returned in 1856. He knew of the sale of the Comstock farm and the purchase of the Strickland farm by his father. He moved with his father's family from the Comstock farm to the Strickland farm, being then fourteen or fifteen years of age. When he left home, in 1853, for the whaling voyage, the suit of Jesse Comstock against Asa Comstock had been commenced. It was decided, and the action of the General Assembly was had while he was absent; and no guardian had been appointed by the court of probate for him. Soon after his return he made inquiry about the suit and learned how it had been decided. He also learned of the action of the General Assembly and of the doings of the court of probate. At about that time he procured and read a copy of the resolution of the General Assembly, and also of his grandfather's will. During all the time from 1856 to this date the plaintiff has been fully cognizant of the building of the railroad, the depot and other buildings, of the occupancy by the defendant of the demanded premises, and of the laying out of the cemetery and the erection by him of the monument, and of all the changes and improvements that have been made on the Comstock farm. He has never objected, nor has he made any claim to the defendant, or to any of the persons interested, that he had, or claimed to have, any right or estate in the farm, until a few days before the commencement of the present action.

Upon these facts the case was reserved for the advice of this court.

*D. Chadwick* and *C. E. Perkins*, for the plaintiff.

*First.* This is not a confirming act within the power of the legislature, but an attempt to take one person's property and give it to another. The distinction is clear. If

a grantor has power to convey lands, and executes and delivers a deed purporting to convey them, but by mistake some formality is omitted, so that the deed does not comply with the law, the legislature may properly say that the deed shall be valid. Such acts are sustained as merely carrying out the intention of the grantor, and making him do what he had agreed to do. They are like the powers of a court of equity to correct a mistake in a deed, or otherwise to prevent fraud. So, in relation to acts confirming marriages, or contracts supposed to be valid but void for usury, where the parties had the power to contract and intended to perform a valid and proper act, and supposed that they were acting legally and effectually, but by mistake did not. All the cases in Connecticut are of this description. *Goshen* v. *Stonington*, 4 Conn., 221; *Mather* v. *Chapman*, 6 id., 54; *Beach* v. *Walker*, id., 190; *Booth* v. *Booth*, 7 id., 350; *City of Bridgeport* v. *Housatonic R. R. Co.*, 15 id., 475; *Plumb* v. *Sawyer*, 21 id., 351; *Savings Bank* v. *Allen*, 28 id., 97; *Welch* v. *Wadsworth*, 30 id., 149; *Ecclesiastical Society* v. *Suffield*, 42 id., 570; *Simpson* v. *Hall*, 47 id., 417; *Norris* v. *Sullivan*, id., 474. In *Forster* v. *Forster*, 129 Mass., 559, this subject is fully discussed, and the various classes of cases where confirming laws are held valid are stated, much to the same effect. So in Cooley on Constitutional Law, pp. 373 to 379, where the subject is fully considered, and the same principles are laid down, and the precise distinction which we claim is clearly made, namely, that while an invalid deed may be confirmed *as between the parties to it*, yet where the infirmity is in the *want of power in the grantor to convey*, the legislature can not heal it. The decisions in the courts of our sister states are all to the same effect. *Shonk* v. *Brown*, 61 Penn. St., 327; *Alter's Appeal*, 67 id., 341; *Richards* v. *Rote*, 68 id., 248; *Maxwell* v. *Goetschius*, 40 N. Jer. Law, 383; *McDaniel* v. *Correll*, 19 Ills., 226; *Nelson* v. *Rountree*, 23 Wis., 367; *Pryor* v. *Downey*, 50 Cal., 388; *Powers* v. *Bergen*, 6 N. York, 358; Sedgw. on Stat. & Const. Law, 143, note.

In *Denny* v. *Mattoon*, 2 Allen, 383, the court says:—" To

say that a man's property may be taken from him by force of an act of legislation which attempts to confirm and give validity to proceedings which have previously been adjudged void for want of authority and jurisdiction, is only to affirm that he may be deprived of his estate without due process of law." . It does not legalize the transaction that provision was made that security should be given for the benefit of the remainder-men. If the legislature had no power to pass such an act at all, such a clause would not heal it. My land cannot be taken by a legislative act because provision is made that I shall have payment for it, except where it is taken for a public use. It may be claimed that the legislature has power to order a sale of lands held by tenant for life and remainder-men as a change of investment, and that what it can authorize it can confirm; but this is not so in that sense. The legislature can, under certain circumstances, authorize a sale of property held in common, but if one tenant in common should sell the whole fee, can the legislature, by enacting that that deed should pass the title of the other tenant on tendering to him half the avails, deprive him of his property? No one would claim it. The precise difference is, that in one case a person is deprived of his property by due process of law, and in the other without it. In one case there is a power to give the deed, in the other the deed is void because there was no power to give it, and it is the mere arbitrary act of the legislature which divests the estate from one and vests it in the other. It is clear that this act cannot be sustained merely as a confirming act.

*Second.* But the defendant claims that this act is valid under the power which the legislature has to authorize a re-investment of the property of lunatics, minors, and others incompetent to act for themselves.

1. It is true that the legislature, under certain circumstances, has the power to authorize a sale. of the lands of minors, just as it has to sell the estates of remainder-men or of tenants in. common, but this is not an act to *authorize a sale.* That is precisely the objection to the act, that it does

Comstock v. Gay.

not authorize a sale, nor does it confirm a sale already made
or intended to be made, for the deed given by Asa Comstock
was not intended and did not purport to sell or convey any
property of this plaintiff. Neither the grantor nor the grantee
supposed that any interest in the land belonging to the
plaintiff was conveyed. As to him that deed was as void as
a deed given by any person who had no interest in the land
whatever would have been. If it had any effect whatever,
it was as an original conveyance of the title, like a decree of
court conveying the title out of Nathan Comstock into
Jedediah Gay. And this is what the act purports to do.
If it had stopped with saying that the deeds be " confirmed
and established," it would have had no effect; the deeds, as
deeds, were good enough; *they* did not need to be confirmed.
The trouble was that the grantor not only did not have
what he was trying to convey, but did not know that his
son had it. Neither party had any idea that the son's
interest was to be conveyed or that he had any. There was
no earthly power, unless it might be the legislature, that
could make a deed of one man's interest convey the interest
of another, so they got the legislature to add this clause,
that the title to this land be *established in the grantees for-
ever as against all persons who had any interest in the land.*
If, therefore, this act is effectual at all, it is as an original
conveyance of title made by the *parens patriæ.* It hardly
needs citations or authority to show that this can not be
done; nor will it be claimed; the only hope of the defen-
dant is in finding some ground for the exercise of this power
by the legislature in the facts which are set up in the
petition.

2. But these facts do not help them on this point. Even
if we admit that the legislature might in some way have
acted as the guardian of this minor, yet it did not purport
to so act, nor is that the ground on which the act is based.
If the act had said in substance, whereas this minor has a
remainder in certain real estate, and it is necessary and
beneficial for him that it be sold, and Jedediah Gay will
give two thousand dollars for it, and it is therefore decreed

Comstock v. Gay.

that the title be taken from said minor and vested in said Gay upon his properly paying over the money; if that had been the act, it would at least have had the advantage of being based on a certain well-known power, and it might have been said that the legislature had jurisdiction of the subject-matter. But this act is not based on any such power. The reason for passing it is stated to be, not the benefit of the minors, but the injury to the grantees. The preamble states that it was supposed that Asa owned the fee, and, relying on that, the grantees expended money in improvements on the land, and that they were in danger of loss unless the legislature interposed for their relief. It is placed entirely on the ground of this mistake. It will not do to say that if the legislature had no power to interfere for this reason, yet there were other reasons why it should interfere. If the application had been based on other grounds, there is no knowing what the legislature would have done. If the act is not valid as it stands, it does not help it to say now that, if other facts had been stated and proved, then the legislature might have had power to bring about a similar result. The question is, whether the act as it was passed, on the grounds therein stated, was valid. The legislature had no more power by resolution to divest a minor of his land than it has to divest an adult who is a tenant in common or a remainder-man. In either case it can either authorize a court to order a sale under certain circumstances, or it can, under similar circumstances, authorize some person to sell for the owners, and give a conveyance, without the intervention of a court. It has as much power in one case as in the other, but no one would claim that in the case of adult remainder-men, or tenants in common, it could by resolution divest them of their estates because some grantee, by mistake, had supposed that he had bought the fee, and would sustain injury if it were not done; and no one would claim that such an act would be valid because under other circumstances, and in a proper manner, the legislature might have authorized a sale. A minor can no more be deprived of his property without due process of law

Comstock v. Gay.

than an adult. The principles stated and authorities cited under our first head apply equally to this claim.

3. There is nothing in the case showing that the legislature had any power to order or confirm a sale of the property of this minor. Under our form of government no person holds his estate subject to an absolute power in the legislature to order a sale of it for any reason it sees fit. No doubt there is a power in that body, under certain circumstances and for certain reasons, to order the sale of property of any one who is not competent to do it for himself, if it becomes necessary for his interests that it should be done; but it is only on that ground and for that reason. Such an exercise of power is an extreme one, and has been often and strongly contested in the courts, and within this limitation it has been sustained; but the courts have always strictly confined the exercise of such power to cases where the interests of the minor required it. In *Rice* v. *Parkman*, 16 Mass., 326, which is the leading case on the subject, the court say (p. 330): "No one imagines that under this general authority the legislature could deprive a citizen of his estate, or impair any valuable contract in which he may be interested. But there seems to be no reason to doubt that upon his application or on the application of those who properly represent him, if disabled from acting himself, a beneficial change of his estate, or a sale of it for purposes necessary and convenient for the lawful owner, is a just and proper subject for the exercise of that authority." So in *Cochran* v. *Van Surlay*, 20 Wend., 365, the leading case in New York, the court say (p. 373): "But even that power cannot constitutionally be so far extended as to transfer the beneficial use of the property to another person, except in those cases where it can legally be presumed the owner of the property would himself have given the use of the property to the other." See also *Leggett* v. *Hunter*, 19 N. York, 461; Cooley on Const. Lim., 103; Sedgw. on Stat. & Const. Law, 140, note.

4. Perhaps the most serious objection to the validity of this act is that it was passed, not only without any notice

to the plaintiff, or any appearance of any one for him, but also while he was thousands of miles away on a whaling voyage, where there was no possibility of his knowing anything about the proceedings. No principle can be more firmly established than the one that "due process of law" requires notice of any proceedings to deprive one of his property. Even in cases of taking property under the right of eminent domain for the most necessary public purposes, it is indispensable that the owners of the property to be taken should have notice to appear and defend their rights. Authorities are unnecessary on this point, but we will cite a few. *Smith* v. *Rice*, 11 Mass., 507; *Cook* v. *Darling*, 18 Pick., 393; *Fisher* v. *McGirr*, 1 Gray, 1; *Salem* v. *Eastern R. R. Co.*, 98 Mass., 431; *Hess* v. *Cole*, 3 Zabr., 116; *Youngs* v. *Overseers*, 2 Green, 518; *Turnpike Co.* v. *Hall*, 2 Harr., 337; *Camden* v. *Hatton*, 10 Vroom, 122. The only plausible claim that can be made is, that the plaintiff's father was his guardian, and that he appeared and protected the interests of this minor. No doubt he did appear, and urged the passage of the act; but it was not in the interest of the plaintiff, but in his own. All his interests were in favor of the passage of the act, and it is a mockery of justice to say that this plaintiff's interests were properly represented by the very person whose interest and purpose it was to have them destroyed for his benefit. In *Rice* v. *Parkman*, 16 Mass., 332, the court says, in relation to the claim that the infants had not been notified,—"The father acted as guardian, and he had no interest adverse to that of his children;" which is equivalent to saying that if his interests had been adverse to his children his being made a party would have been insufficient.

5. Nor is there any weight in the fact that the legislature directed that the father should give a bond to the judge of probate to hold the avails of the sale for the benefit of those entitled to the remainder. As before shown, this provision was of no avail unless the legislature had the power to pass the act for the reasons therein stated. If it did not have the power, no provision as to what should be done with the

avails would heal or supply that want. The legislature has no power to take my property and give it to another because it directs that I shall have what it pleases to call its value. We have then the case of an act depriving the plaintiff of his property and vesting it in the defendant, simply on the ground that the father of the plaintiff supposed he owned the fee, and sold it to another, and this mistake, if not rectified, would injure the grantee. The authorities are clear, if any were needed, that no legislature has, or can have, such power. *Powers* v. *Bergen,* 6 N. York, 367 ; *Wilkinson* v. *Leland,* 2 Peters, 657 ; *Berlin* v. *New Britain,* 9 Conn., 181.

*Third.* It may be claimed that the plaintiff is estopped from setting up any claim to this land. If so it can only be on one of two grounds. (1.) That he has not objected to the expenditures on the premises in question by the defendant, and made no claim to the property. The answer to this is that the defendant had full right to occupy and use the land while the plaintiff's father lived, and the plaintiff had no power or right to prevent him from doing what he pleased. The fact of the legislative act was as well known to one as to the other, and there was no law or reason which required the plaintiff, before he had any right to the possession of the property, to give any notice to the defendant. An estoppel arises only in cases where the plaintiff has some rights which are affected by the acts of the defendant, and if he allows them to be done, he cannot assert his rights to the injury of the defendant. No such case appears here. *Giddings* v. *Emerson,* 24 Conn., 546 ; *Taylor* v. *Ely,* 25 id., 260 ; *Steele* v. *Smelting Co.,* 106 U. S. R., 456. (2.) It may be claimed that because the plaintiff sold the Strickland farm, and as administrator of his father received the bank books of the judge of probate, he is estopped from setting up his legal and equitable rights to the land in question. But this is absurd. What else could he do ? Was he to let the farm lie desolate, and the money remain in the hands of the judge of probate, in order to sustain his claim ? (3.) Nor is he estopped by his father's covenants on the

ground that he inherited estate from him. What assets he received came directly from his grandfather, not from his father. *Perry* v. *Kline*, 12 Cush., 118, 127.

*J. Halsey* and *G. Greene, Jr.*, for the defendant.

1. The legislature has power to authorize the sale of the real estate of minors, idiots and other persons under disabilities. Its power is unlimited except so far as it is restricted by the constitution of the United States, of the state, or the principles of the social compact. *Mather* v. *Chapman*, 6 Conn., 54; *Leggett* v. *Hunter*, 19 N. York, 463. The constitution of this state is a limitation of powers already existing in the legislature. With few limitations it left the legislative department as it found it. *Pratt* v. *Allen*, 13 Conn., 119, 125. "It is a limitation, not a grant of power, and, except as limited by express provisions, the legislature is unrestricted in power, and as omnipotent, in a legal sense, as the British Parliament." It has even judicial power as well as legislative. *Wheeler's Appeal from Probate*, 45 Conn., 315. Every presumption is to be made in favor of the validity of acts of the legislature. *Davison* v. *Johonnot*, 7 Met., 392. The authority to order the sale of the land of persons disabled to act for themselves must, for the good of society, exist somewhere, and is vested in the legislature as *parens patriæ*. *Rice* v. *Parkman*, 16 Mass., 326; *Humphrey* v. *Whitney*, 3 Pick., 158; *Davison* v. *Johonnot*, 7 Met., 388; *Sohier* v. *Mass. Gen. Hospital*, 3 Cush., 483; *Clarke* v. *Hayes*, 9 Gray, 426; *Sohier* v. *Trinity Church*, 109 Mass., 1; *Old South Society* v. *Crocker*, 119 id., 26; *Blagge* v. *Miles*, 1 Story, 426; *Clarke* v. *Van Surlay*, 15 Wend., 436; *Cochran* v. *Van Surlay*, 20 id., 365; *Bambaugh* v. *Bambaugh*, 11 Serg. & R., 191; *Estep* v. *Hutchman*, 14 id., 435; *Powers* v. *Bergen*, 6 N. York, 358; *Leggett* v. *Hunter*, 19 id., 463; *Kibby* v. *Chitwood's Admr.*, 4 T. B. Monr., 91; *Wilkinson* v. *Leland*, 2 Pet., 653; *DeMill* v. *Lockwood*, 3 Blatchf., 56; *Stanley* v. *Colt*, 5 Wall., 168; *Hoyt* v. *Sprague*, 103 U. S. R., 634; *Linsley* v. *Hubbard*, 44 Conn., 109. The legislature has power to order a sale of

the vested estates of minors in land, the only effect of the action being to transmute real into personal estate for purposes beneficial to all interested therein. *Rice* v. *Parkman*, *Leggett* v. *Hunter*, *Clarke* v. *Van Surlay*, *Kibby* v. *Chitwood*, and *DeMill* v. *Lockwood*, cited above. It has also delegated to the probate courts the power to order the sale of the land of minors and incompetent persons. Gen. Stats., p. 56, §§ 18–25 ; p. 347, § 5. So also to order a sale of the lands of persons unascertained. *Sohier* v. *Mass. Gen. Hospital*, *Powers* v. *Bergen*, *Blagge* v. *Miles*, and *Clarke* v. *Hayes*, cited above. So also of the lands of persons *non compos*. *Davison* v. *Johonnot*, 7 Met., 392. So also to order a sale, free from the trust, of lands devoted by will or deed to religious or charitable uses. *Stanley* v. *Colt*, *Humphrey* v. *Whitney*, *Sohier* v. *Trinity Church*, and *Old South Church* v. *Crocker*, cited above.

2. This court has carried the doctrine further than to the cases of persons under disability, and in *Linsley* v. *Hubbard*, 44 Conn., 109, has held that the legislature may authorize a sale of the fee, on motion of the life tenant, against the wishes of contingent remainder-men who are *sui juris*. The power of the legislature thus exercised is analogous to that exercised in some of the following cases, and certainly no greater or more objectionable than that exercised in the same :—In authorizing the sale of land of. tenants in common against the will of some of them. *Richardson* v. *Monson*, 23 Conn., 94. In passing an act divorcing a woman for a cause not sufficient for obtaining a divorce by the general law, although thereby the title of the husband and his execution creditor was affected. *Starr* v. *Pease*, 8 Conn., 541. In passing an act validating irregular marriages, though thereby impairing vested property rights. *Goshen* v. *Stonington*, 4 Conn., 209. In changing estates in joint tenancy to tenancy in common, though material vested interests might be thereby affected. *Holbrook* v. *Finney*, 4 Mass., 568 ; *Annable* v. *Patch*, 3 Pick., 363 ; *Davison* v. *Johonnot*, supra. In enacting laws to render valid the doings of public officers, and to confirm acts of towns and

other corporations, invalid for some informality, although by such enactments individuals may be deprived of rights previously vested. *Walter* v. *Bacon*, 8 Mass., 468; *Patterson* v. *Philbrook*, 9 id., 151; *Locke* v. *Dane*, id., 360; *Davison* v. *Johonnot*, supra.

3. If, as above shown, the legislature has power to order the sale of a vested interest in land, much more can it order the sale of a mere possibility, as in the case at bar. During the life of Asa Comstock, the first donee in tail, his two sons, the issue of the donee in tail, had no strict legal rights. The legislature might have enacted that the estate tail should become a fee in Asa, the first donee, and utterly prevented the plaintiff's right from coming into being. The fact that the plaintiff had no estate during his father's life is illustrated by the case of his brother Joseph, who, at the time of the legislative action, stood on a par with the plaintiff as to any interest in the estate tail. He, however, died before his father, the first donee, and it will not be contended that his heirs took any estate at the death of the first donee. If, by chance, the plaintiff had died before his father, his rights never would have vested, but the estate tail would have expired. By the same power by which the legislature of this state has enacted that estates tail shall become fees simple in the issue of the first donee in tail, it might have enacted, as the legislature of New York has done, that every fee tail shall be a fee simple in the tenant in tail, that is, in this case, in Asa. And this can be done as well by a special as by a general law. This doctrine is fully enunciated by INGERSOLL, J., holding the U. S. Circuit Court, in the case of *DeMill* v. *Lockwood*, 3 Blatchf., 56— a case which depended upon the validity of the action of the Connecticut legislature. It follows that, in the case at bar, the legislature, in providing for the safe keeping of the proceeds of the sale for the benefit of the plaintiff, gave him more protection than he had any right to demand.

4. If it be objected that no guardian was appointed to represent the minor, and no notice of the application to the legislature given him, the answer is that to give him notice

under the circumstances of the case was a physical impossibility, and further, that no notice was required. In *Rice* v. *Parkman*, 16 Mass., 326, it was held that no notice to the minor was requisite, that the father acted as guardian, and that he had no interest adverse to that of his children. The interests of Asa, the donee in tail, and of the plaintiff, his heir presumptive, were identical, to sell the land for the highest price. At that time, 1855, and until the statute of 1865, the father, as natural guardian, had custody both of the person and property of his minor children, and as much authority to represent them before the legislature in a case where their interests were not opposed, as a probate guardian would have had. *Selden's Appeal from Probate*, 31 Conn., 548.

5. If it be said that the act of the legislature was a ratification of a prior void sale, it is answered that the legislature had power to authorize the sale in advance, and, what it could order to be done, it could ratify when done. *Wilkinson* v. *Leland*, 2 Pet., 653; *Sohier* v. *Mass. Gen. Hospital*, 5 Cush., 483; *Goshen* v. *Stonington*, 4 Conn., 209; *Mather* v. *Chapman*, 6 id., 54; *Beach* v. *Walker*, id., 190; *Starr* v. *Pease*, 8 id., 541; *Welch* v. *Wadsworth*, 30 id., 149; *Booth* v. *Woodbury*, 32 id., 118; *Wheeler's Appeal from Probate*, 45 id., 306; cases cited in *Davison* v. *Johonnot*, 7 Met., 396.

6. The estate tail was barred by the conveyance with warranty by Asa, the first donee in tail. Bigelow on Estoppel, 326; 1 Swift Dig., 80. Asa, the first donee, aliened the estate tail, with warranty, and dying, left assets to his sole heir, the plaintiff. The plaintiff is therefore liable on his father's covenant to the extent of the assets received from him. To prevent circuity of action, the plaintiff will therefore not be allowed to recover the estate tail from his father's grantees. If it be said that the property the plaintiff received from his father is not assets, but the proceeds of the sale of the estate tail, we answer that the plaintiff did or did not receive it as the estate devised by his grandfather, merely transmuted in form. If he did, how can he

ask the defendant for what he himself has? If he did not, he received it as assets from his father's estate, and is bound by the rule just stated. At any rate, if the plaintiff were allowed to recover, the land demanded would become assets in his hands, he taking it as heir by descent from his father, not by purchase. *DeMill* v. *Lockwood*, 3 Blatchf., 63; 1 Washb. R. Prop., 74, § 30.

7. The plaintiff is estopped, by his acquiescence for thirty years in the possession and improvements of the defendant and the other grantees of the land, from denying their title to the land. "If the owner of an estate stand by and see, or in any way induce, another to expend money upon it in reliance upon a claim in derogation of the owner's right, without which such expenditure would be useless, and, knowing what is going on is in prejudice of his rights, do not interpose to prevent the work, he will not be permitted to interrupt the enjoyment of such claim." Bigelow on Estoppel, 504, and cases cited; *Smith* v. *Smith*, 30 Conn., 111; *Parker* v. *Crittenden*, 37 id., 152; *Malley* v. *Thalheimer*, 44 id., 41.

8. The plaintiff, by converting to his own use the proceeds of the sale, especially by conveying by warranty deed the land into which part of the proceeds of the sale were transmuted, has accepted and ratified the sale. *Hoyt* v. *Sprague*, 103 U. S. R., 636; 1 Parsons on Cont., 50, 51.

CARPENTER, J. This is an action for the possession of land. The premises were devised to Asa Comstock, the father of the plaintiff, in fee tail. After issue born the tenant in tail was advised that he owned a fee simple and thereupon he sold the land with covenants of seisin and warranty. In *Comstock* v. *Comstock*, 23 Conn., 349, this court held that Asa Comstock was a tenant in tail and that he could only convey a life estate in the property. Thereupon the parties in interest applied to the legislature, and an act was passed validating and confirming the deeds and making good the title of the grantees in fee simple. The case is reserved for the advice of this court.

The plaintiff claims that the act was unconstitutional and void, and that the title is in the issue in tail. The defendant claims under one of the grantees of Asa Comstock. The question is, whether the legislature had power to confirm the deeds and make good the title in the grantees.

It is not denied that the legislature as *parens patriœ* has power to order the sale of lands of minors and persons *non compos*. By general statute in this state the courts are authorized in certain cases to order the sale of lands owned by joint-tenants, or tenants in common, and that statute has been held to be constitutional. *Richardson* v. *Monson*, 23 Conn., 94. By special act at the instance of the life tenant and against the wishes of the remainder-man, the whole estate was sold, and this court held that the act was valid and the deed good. *Linsley* v. *Hubbard*, 44 Conn., 109.

If in this case the plaintiff, or any one in his behalf, he then being a minor, had asked the legislature to order the sale of the property, and the legislature had found it to be for his interest that it should be sold, we suppose that the validity of the act would not have been questioned. But the plaintiff well says that the action of the legislature was not invoked for any such reason—that the petition and the act itself show that it was not the interest of the minors but of other parties that the legislature had in view. The minors were not petitioners, and no one petitioned in their behalf. Nor was this plaintiff in any proper sense a party to the proceeding. The petition alleged that the only children of the said Asa were Nathan and Joseph, that they were minors, and that said Asa was their guardian. These allegations in general terms were found true, and the rights of the minors were supposed to be fully protected in the provision that the avails of the sale should be secured to them. And that is all there is in the proceeding that refers to the minors. It nowhere appears affirmatively and expressly that it was for their interest that the real estate should be sold, or that the sale previously made should be affirmed. If that naked question had been presented to the legislature possibly its action would have been different.

We think it better therefore that the act should be vindicated, if at all, on other grounds.

The case of *Linsley* v. *Hubbard, supra,* in principle perhaps may be regarded as an authority sustaining the action of the legislature in this case; but the two cases do not stand precisely upon the same ground, and, as that case was decided by a divided court, we do not choose to rest our decision wholly upon its authority. It will be noticed that in the cases referred to the parties concerned had vested rights which were affected by the legislation in question, and those rights were carefully protected. In the absence of such protection it would be difficult to sustain the action of the legislature. *Sohier* v. *Massachusetts General Hospital,* 3 Cush., 483. But in the case before us the party objecting to the validity of the act of the legislature had not at the time a vested interest. His interest was a mere possibility. He had no estate in the premises and it was not certain that he ever would have. Had he died during the lifetime of his father, as his brother Joseph did, no estate would ever have vested in him. Naked possibilities or mere expectancies of this character are not property in the ordinary sense. They cannot be disposed of by will or deed and are not subject to attachment. *Smith* v. *Pendell,* 19 Conn., 107. They are therefore not property, and are not regarded as vested rights beyond legislative control.

In England a tenant in tail may bar his issue by levying a fine, suffering a common recovery, and by a deed with lineal warranty leaving assets to the heirs. In this state the two former modes of conveyance are unknown, and the latter is the only mode in which the tenant in tail may by his own act bar his issue. But the legislature has full power over such estates. The statute enacting that the estate shall be a fee simple in the issue of the first donee in tail is an exercise of this power. It would have been no greater stretch of authority to have made the estate a fee simple in the tenant in tail. Indeed, it is fully competent now for the legislature to enact that all tenancies in tail shall be tenancies in fee simple. If it may be done by gen-

eral statute in all cases, it may be done by special statute in particular cases. For the same reason and upon the same principle it is competent for the legislature to authorize a tenant in tail to convey an estate in fee simple; and if it may be authorized it may be subsequently ratified and confirmed.

A question as to the effect of an act of the legislature arose in the case of *DeMill* v. *Lockwood*, 3 Blatchford, 56. The circumstances were these:—In 1790 Anthony DeMill devised land in tail male to Peter DeMill. Thomas A., a son of Peter, was born in 1799. In 1798 Peter conveyed to Mary Arnold. She, by will, devised the premises to the children of Peter, and died in 1801. In October, 1801, Peter Quintard was appointed guardian of the children of Peter DeMill, who had then been born, namely, Thomas A., two daughters, and a son who died in 1839. As such guardian he presented a petition to the legislature, alleging that his wards were the owners of the premises in fee simple, and prayed for power to sell for the benefit of his wards. Power was granted and the premises were sold in April, 1802. The act provided that the title conveyed should be a fee simple. Three sons were afterwards born to Peter, and he died in 1852. Thomas A. and the three sons born after the conveyance by Quintard, brought ejectment for the premises. In holding that the three younger sons had no title to the premises, INGERSOLL, J., says:—"The legislature would have had a right, by a general law, to declare every fee tail to be a fee simple in the tenant in tail; and, after such general law, an estate in fee tail would, in the tenant in tail, be converted into a fee simple. Such was the course adopted by the legislature of the state of New York. The legislature, by so doing, would not take any right of property from any one and vest it in another. They would not take any strict legal right from any one. For the issue of the donee in tail has no strict legal right until after the death of such donee. During the life of such donee such issue has no right in the entailed estate which can be conveyed, but only a possibility or expectancy, or capability of inheriting.

He has no right to convey; and, by the common law, such issue may, in various ways, without any act done by him, or any act left undone by him, be deprived of that possibility or expectancy. The legislature have a right at all times, by a general law, to change the course of the inheritance, and deprive such issue of the capability of inheriting."

That case is in point, and we think the principles therein enunciated are sound. It follows that the legislature had power to declare the estate in Asa Comstock a fee simple; and if they had power to do that, they had power to declare the estate in his grantees to be a fee simple. Our conclusion therefore is that the act of the legislature was valid, and that the title to the demanded premises is in the defendant.

We advise judgment for the defendant.

In this opinion the other judges concurred.