THEODORE FRANCIS GREEN *vs.* STEPHEN O. EDWARDS, *et al.*

JULY 7, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Equitable Estates in Fee Tail. Barring the Estate Tail.*

Trustees were directed by will to stand seized of the trust estate during the lives of testator's three children, and the survivors of them, equally for the benefit of the children, the property to be held, and the income to be paid to the children during life, and upon the death of either, to convey such portion to his or her lineal descendants: and if no lineal descendant, then equally to the survivors of the children of testator, or their lineal descendants; and in case of the decease of all of the children of testator without issue, to his heirs-at-law.

X., one of the children, conveyed by deed to complainant, in fee-simple, all of her interest in the trust property, stating her intention to bar the entail, under the provisions of Pub. Laws, cap. 1346, of 1906. On bill seeking a conveyance in fee, to complainant, of the legal title, free from the trust:—

*Held,* that the opinion in *Paine v. Sackett,* 27 R. I., 300, holding that the titles of the beneficiaries under the will were equitable estates-tail, was *res judicata,* in this case.

*Held,* further, that the bill sufficiently set forth the claim of *res judicata,* but even if it did not it was amendable in this respect.

*Held,* further, that it was not affected by the fact that no final decree had been entered in the former case.

(2) *Barring Equitable Estate-Tail.*

The English doctrine of barring an equitable estate-tail has never been followed in this country, and in this State authority must be found, if at all, in statutory enactment.

(3)   *Barring Equitable Estates–Tail.   Res Judicata.*

The case of *Paine* v. *Sackett*, 27 R. I. 300, relating to the effect of the statutes in force at the time the will went into effect and subsequently down to the filing of the amended bill in that case, as to the barring of equitable estates in fee-tail, is *res judicata*, in this case, so far as the statutes in their then form are concerned.

(4)   *Barring Equitable Estates-Tail.   Constitutional Law.*

Pub. Laws, cap. 1346, of 1906, re-enacted as Gen. Laws, 1909, cap. 252, § 16, validating conveyances of equitable estates-tail, by deed in common form in which the intention is expressed of barring the entail, made since Jan. 31, 1896, and providing that equitable estates-tail in possession or remainder and all remainders and reversions expectant thereon, may be barred in the same manner as legal estates-tail, is broad enough to cover the deed of X. to the complainant.

Such statute is clearly retroactive, and, so far as it attempts to authorize the barring of equitable estates-tail, and all remainders and reversions expectant thereon, created and in existance, prior to the passage thereof, is unconstitutional and void, as being in violation of Cons. R. I. art. I § 10, and of Cons. U. S. art. XIV of amendments.

Blodgett and Sweetland, JJ, concurring.

BILL IN EQUITY to compel conveyance.   Bill dismissed.

PARKHURST, J. This bill of complaint is filed by Theodore Francis Green, to compel a conveyance and transfer to him of two-fifths of the trust estate, now held by Stephen O. Edwards, Nicholas Sheldon, and Charles Edward Paine, the present trustees, under the will of Daniel Paine, late of Providence, deceased. The respondents include the trustees named and all persons in any way interested in the trust estate. A copy of the will is attached to the bill as an exhibit, and the complainant's claim is based upon a conveyance to him, by Emma L. Sackett, of all her right in the trust estate, made for the express purpose of barring the entail created by the will in her favor.

The interest of Emma L. Sackett, under the will, was created by the eighth clause thereof, whereby Daniel Paine devised and bequeathed all the rest and residue of his real and personal estate to trustees in the following manner:

The trustees are directed to stand seized of the trust property and estate during the lives of his wife Louisa Paine, his daugh-

ter Martha E. Griswold, his daughter Emma Louise Paine, (now Emma L. Sackett), and his son Charles Edward Paine, and of the survivor and survivors of them, upon the following trusts:

The trustees are to manage and improve the estate, with powers of sale, lease, and investment. Directions are given for the appointment of new trustees, when necessary, and for the keeping of accounts. Then follows a provision that the trustees shall hold in trust for the testator's wife, Louisa Paine, a specified sum, and that at her death they shall convey and transfer the same equally to the testator's children then living, or their lineal descendants if any there shall be.

The will proceeds as follows:

"The remainder of the said rest and residue of my estate over and above the said sum of Two hundred Fifty Thousand Dollars ($250,000), my said trustees shall hold equally for the benefit of my children, Martha E. Griswold, Emma L. Paine, and Charles Edward Paine.

"They may and shall from time to time, upon request in writing of either of my said daughters, pay to her such sums as she may desire on account of her portion of my said estate, the whole amount to be paid to her not to exceed in any event one-half of her portion of my estate. They may and shall from time to time, upon request in writing of my son, pay to him such sums of money as he may desire on account of his portion of my said estate, the whole amount to be paid to him not to exceed three-fourths of his portion of my estate.

"They shall hold the remainder of the property and estate herein devised to each of my said children after payment to them of the sums called for as aforesaid, and pay to each of them the rents, profits and income of his or her portion of said property and estate during his or her natural life and at his or her death shall transfer and convey the same to his or her lineal descendants, if any there shall be, and if there be no lineal descendants, then equally to the survivors of my said children, or their lineal descendants if any there be; the descendants of any child to have the portion which their parent if living would have taken." . ., .

"In case of the death of all my said children without issue, they shall transfer and convey the estate held by them in trust to my heirs at law according to the statutes of descent and distribution then in force in the State of Rhode Island."

The undisputed facts, as shown by bill, answer, and proofs, are that Daniel Paine died on the 28th day of May, 1866, leaving a will as above stated (and the devolution of title to the present trustees is shown); that Daniel Paine left surviving him the beneficiaries above named; that Louisa Paine, his wife, died in 1880; that Martha E. Griswold, his daughter, died in 1884, leaving two sons, one of whom died in 1906 leaving a will, a copy of which is annexed to the bill; that Emma L. Sackett (née Paine) is still living; that Frederic M. Sackett, Jr., Henry W. Sackett, Elizabeth P. Hazard, and Franklin P. Sackett are all of her children, and, with Elizabeth Hazard, her grandchild, are all of her lineal descendants; and that John Fiske Paine and Louisa Paine Tingley are all the children and lineal descendants of Charles Edward Paine; that of the estate now held by the trustees, Emma L. Sackett, prior to making the conveyance to the complainant referred to below, was entitled to an interest in two-fifths, and the property is described by reference; that the effect of clause eighth of the will, above set forth, was to vest in Martha E. Griswold, Emma L. Sackett, and Charles Edward Paine an undivided equitable estate in fee-tail, in his or her share of the property and estate, as was decided by the Supreme Court of this State, in the case of *Charles Edward Paine* v. *Emma L. Sackett, et al.*, reported in 27 R. I. 300; that Emma L. Sackett, by her deed of October 1st, 1908, conveyed to the complainant, in fee-simple, all of her interest in the trust property in which deed the grantor expressly stated her intention to bar the entail in her estate, conformably to the provisions of chapter 1346 of Public Laws of 1906, whereupon the complainant claims that he became vested with the full equitable title in fee-simple to the share of property referred to; that the complainant has requested the trustees to convey to him in fee-simple the legal title to two-fifths of the trust estate, which they have declined to do.

The complainant accordingly prays that the trustees may be directed to convey to him in fee-simple the legal title, free from the trust, to two-fifths of each parcel of the trust real estate, and to transfer to him two-fifths of all personal property held by the trustees.

The answers of two of the trustees, Stephen O. Edwards and Charles Edward Paine, admit the allegations of the bill and aver willingness of the two trustees named to make the conveyance prayed for, provided they can lawfully and properly do so. That of Stephen O. Edwards in addition expresses a doubt upon the point, and asks the opinion of the court upon the question whether chapter 1346 of the Public Laws is constitutional; whether it applies to equitable estates-tail created prior to February 1st, 1896, and if so, whether it is the duty of the trustees to make such a conveyance as is requested. The answer filed by Abbott Phillips, *guardian ad litem*, states the minority of Elizabeth Hazard and calls for proof, which has since been furnished, and will be found embodied in the report of the Master in Chancery as confirmed by the Superior Court.

The answers of all the other respondents, except Nicholas Sheldon, trustee, Frank F. Tingley, and his wife Louisa Paine Tingley, admit the allegations of the bill and either join in the prayer thereof or submit the rights of the respondents to the care and protection of the court.

A decree *pro confesso* has been entered against John Fiske Paine and Ida J. Paine.

The answers of Nicholas Sheldon, trustee, and of Frank F. Tingley and Louisa Paine Tingley, raise the two broad questions which this court is called upon to decide. They respectively deny the right of the complainant to relief on the following grounds:

(1) That the estate devised and bequeathed to Emma L. Sackett, under the will of Daniel Paine, was not an equitable estate-tail, but an equitable life-estate with a contingent equitable interest in the nature of a remainder, in the event of her death leaving issue her surviving, to her surviving children

and the issue of such of her children as should have previously
deceased leaving issue them surviving, and with a concurrent
contingent equitable interest in the nature of remainder in the
event of her death without leaving issue her surviving to the
other children of Daniel Paine then surviving . . . and lastly,
with another equitable interest in the nature of a remainder
in the heirs general of Daniel Paine in the event of her death
without leaving any of his issue her surviving. The answers
further aver that, even if Emma L. Sackett and the other chil-
dren of Daniel Paine took by said will an equitable estate-
tail, yet it would not be vested before her or their death, but
would remain contingent until she died, at which time it would
vest if she died leaving issue her surviving, but would other-
wise fail.

(2) That in any event the conveyance by Emma L. Sackett
to the complainant did not vest in him the whole equitable
title in fee-simple to two-fifths of the trust property, and that
chapter 1346 can have no effect upon any interest acquired
previously to the time of the passage of the act, because,

(a) The act should be construed to relate only to estates-
tail thereafter created;

(b) The act, if otherwise construed, is contrary to the pro-
vision of section 10 of article 1, of the constitution of the
State of Rhode Island and is also in violation of article XIV
of the amendments to the constitution of the United States.

In general, the last-mentioned answers admit the other alle-
gations of the bill.

The questions raised by the answers last mentioned are as
follows:

I. Was Emma L. Sackett, on the 1st of October, 1908,
vested with an equitable estate-tail under the trust created
by the said will?

II. Did the conveyance by Emma L. Sackett to Theodore
Francis Green vest in him an equitable estate in fee-simple
in the said trust property, either,

A. at common law?

B. under the Rhode Island Public Laws, cap. 1346?

And in connection with the latter the following questions arise:

(1)  Does this statute relate to estates-tail created prior to its enactment?

(2)  Is it consistent with the provisions of the constitution of Rhode Island, article I, section 10?

(3)  Is it consistent with the provisions of the constitution of the United States, article XIV of the amendments?

With regard to the first question, the complainant contends that Emma L. Sackett was, on the 1st day of October 1908, vested with an equitable estate-tail under the trust created by the will, and in support of this contention relies upon the decision of this court in the case of *Paine* v. *Sackett*, 27 R. I. 300. In that case, in construing the same provisions of the will now before the court, Douglas, C. J., said, at page 304: "There can be little doubt that by the terms of the will equitable estates in fee-tail are given to the testator's three children, with contingent cross remainders to the survivors or their descendants, if either child dies without issue. We think the words 'lineal descendants' in the will have their natural meaning, and the same legal effect as 'heirs of the body.' 2 Bl. Com. 115; 3 Green. Cruise, *231. The testator used them by choice instead of 'children' or 'issue,' which he might have selected if he had decided to avoid the application of the rule under the statute. Equitable life estates are given to the three children (*Sammis* v. *Sammis*, 14 R. I. 123; *Pierce* v. *Pierce*, ib. 514; *Taylor* v. *Lindsay*, ib. 518), and equitable remainders in fee to their lineal descendants (*Tillinghast* v. *Coggeshall*, 7 R. I. 383; *Morris* v. *Potter*, 10 R. I. 58; *Read* v. *Power*, 12 R. I. 16; *Nightingale* v. *Nightingale*, 13 R. I. 113; *Angell Petr.* ib. 630; *Sprague* v. *Sprague*, ib. 701; *Taylor* v. *Lindsay*, supra); hence under the rule in Shelly's case, which, until the enactment of Gen. Laws, cap. 201, § 6, was enforced as an imperative rule of law in Rhode Island, applicable to both legal and equitable estates (*Eaton* v. *Tillinghast*, 4 R. I. 276; *Manchester* v. *Durfee*, 5 R. I. 549; *Bullock* v. *Waterman St. Bap. Sy.*, ib. 273; *Cooper* v. *Cooper*, 6 R. I. 261; *Tillinghast* v. *Coggeshall*, supra;

*Jillson* v. *Wilcox,* 7 R. I. 515, *Brownell* v. *Brownell,* 10 R. I. 509; *Nightingale* v. *Nightingale, supra*; *Angell, Petr. supra; Sprague* v. *Sprague, supra; Pierce* v. *Pierce, supra; Taylor* v. *Lindsay, supra*; *Browning, Petr.* 16 R. I. 441; *Andrews* v. *Lowthrop,* 17 R. I. 60; *Cowing* v. *Dodge,* 19 R. I. 605; *Manchester, Petr.,* 22 R. I. 636; *McNeal* v. *Sherwood,* 24 R. I. 314), the estates given to the testator's children were equitable estates tail."

Counsel representing certain respondents, viz., Sheldon, trustee, Louise Paine Tingley and Frank F. Tingley, have filed elaborate briefs and made extended arguments claiming in effect that the portion of the opinion in *Paine* v. *Sackett, supra,* above quoted, which deals with and determines the nature of the estates held by the beneficiaries under the terms of the trusts to be equitable estates-tail, should not be treated in this case as *res judicata,* for the reason that the determination of that matter was not necessary to the final determination of that cause, as it was possible for the court to have disposed of that cause without such determination; and for the further reason that no final decree has ever been entered in *Paine* v. *Sackett, supra,* and so it is claimed the question involved has never been technically adjudicated. The arguments adduced in support of this view are ingenious, but not convincing. It should be borne in mind that in *Paine* v. *Sackett, supra,* when the original bill was filed, August, 1903, it was filed by Charles Edward Paine, trustee, for the purpose of terminating the trust as to the heirs of Martha E. Griswold, deceased, by conveyance to them of the interest formerly held in trust for their mother, and for the ascertainment of the proper compensation to be allowed to the services of Paine, trustee. It was only by a subsequent amendment, alleging that since the filing of the bill Paine had conveyed his whole beneficial interest in the estate to his wife Eliza T. Paine, claiming that he was entitled to an equitable estate-in-tail, and that by his conveyance to his wife, stating expressly his intention to bar the entail, he had done so, and asking that the trust be also terminated as to that portion so conveyed, or attempted to be conveyed, to his wife,

and that the trustees be required to make conveyance to her, that this question of the nature of the estate given under the will arose in the case.    After hearing a motion by respondents to dismiss the bill as amended, on the ground that it made a new case, the court permitted the bill to stand as amended, upon terms as to payment by complainant of certain expenses for printing new briefs incident to the amendment, in view of the number of parties and the cost of obtaining new services upon them; and the court subsequently refused to entertain a demurrer to the bill based on the same ground.    So it appears that the bill, as amended and finally allowed to stand, presents three distinct questions raised on demurrer:    (1) as to the nature of the complainant's estate under the will and his right to convey it; (2) as to the termination of the trust to the Griswolds by conveyance to them; and (3) as to the allowance of compensation to the complainant as trustee;    and the court proceeded to decide the first two questions, leaving the third, as to the trustee's compensation, to future determination as to amount, to wait till evidence be taken or reference to a master be had if necessary.    As to this latter question we are not advised that any further determination has been had.

The first question, therefore, that came before the court on the amended bill involved the nature of the complainant's estate under the terms of his father's will, he claiming it to be an equitable estate in fee-tail, while respondents urged that it was merely an equitable life-estate.    It was then perfectly within the province of the court to answer the question fully, if it saw fit to do so, rather than to take the easier course and decide that it made no difference in that case whether his estate was of one or the other kind, because in any event the statute did not permit the barring of an equitable estate-tail by conveyance in common form, so that, if it were such an equitable estate-tail, it was not barred and the deed was ineffectual; while if it were a mere equitable life-estate, the conveyance would simply give a life-interest; and so there would be no equity for the termination of the trust in either event.    The court saw fit, as it had the right to do, to answer the question

in full by first determining the nature of the estate to be an equitable estate-tail, and then determining whether it could be barred by deed in common form, and decided that it could not be so barred.

Now it can not be claimed that the decision in *Paine* v. *Sackett, supra,* which was very fully argued on this point, is not the law of that case, or that this question could now be re-opened and re-argued in that case after the lapse of five years. If, then, we should refuse in the case at bar to regard the decision in the former case as *res judicata,* and should come to a different conclusion in this case, we should be placed in the absurd and untenable position of holding that the very same clause of the identical will in question in the two cases gave to one beneficiary a mere life-estate and to another an equitable estate-tail. We can not consent to any such proposition. All of the essential parties are before the court in both cases, and are all the same parties, with the exception of the complainant here, who is a new party brought in by reason of the attempted conveyance of Mrs. Sackett's interest to him, and with the further exception of the executors of Alexander M. Griswold, deceased, and of an infant child of Elizabeth P. Hazard (nee Sackett) born since the case of *Paine* v. *Sackett* was decided, and of the husband of said Elizabeth P. Hazard.

We are of the opinion that the principle of the decision in the case of *Almy* v. *Daniels,* 15 R. I. 312, on the question of *res judicata* is peculiarly applicable to this case. The history of that case was as follows: In or about 1875, a suit was brought by one Almy against one Daniels, which case is reported in 11 R. I. 250. That was a bill in equity, with a prayer for an injunction to restrain the defendant from constructing a building, contrary to the terms of a contract, on land in which the plaintiff claimed an interest. The defendant denied the existence of the contract, and contended, besides, that he was the sole owner of the land in question. It was held that the injunction should not issue *because the plaintiff proved no such contract;* but the court, although expressly saying (p. 255) that it was not necessary to go further in that case, nevertheless

did go further, and construed certain deeds involved in the pleadings to mean that the defendant was not the sole owner of the land, but that the parties were tenants in common thereof. Thereafter the executors of the plaintiff filed the suit reported in 15 R. I. 312, which was an action of account for the exclusive use of a portion of the land by the defendant. The latter pleaded in bar that he was the sole owner of the premises, whereupon the plaintiffs offered the plat and papers in the first case (as the court says) to show that "the question was *res judicata.*" The court goes on to say: "The defendant contended however that the construction put upon said deed in said case was mere *obiter dictum.* Upon a careful examination of that case, we find that the title of the plaintiff's testator to the land in question was directly involved therein. The defendant then claimed precisely what he now claims, viz.: that by the deed the plaintiff's testator conveyed all his interest in the gangway or street to Mead. . . . The opinion shows that the question as to the proper construction of said deed was raised and fully argued in the case and that thereupon the court decided that this strip of land was held by the plaintiff's testator and the defendant as tenants in common. And although it was not strictly necessary for the court to pass upon this question, as the bill was dismissed on the ground that no contract was proved for a private way over the strip of land in dispute as alleged in the bill, yet, as the point was distinctly raised by the pleadings, fully argued by counsel, and thus deliberately passed upon by the court, we think the construction put upon the deed must be held to be *res adjudicata.* . . . In *Alexander* v. *Worthington,* 5 Md. 471, 489, the court say: 'All that is required to establish the authority of any decision is that the *very point* decided was actually before the mind of the court, and was investigated with care and considered in its fullest extent.' 'When a question is presented by a bill in equity, urged and relied upon in the argument, and passed upon by the court in the opinion, it cannot with reason be said that the point was not involved, and the opinion of the court on the question is *obiter dictum.*' "

The case of *Almy* v. *Daniels*, above, was expressly approved on the question of *res judicata* in *Providence Institution for Savings* v. *Barr*, 17 R. I. 131; *Schœffer* v. *Brown*, 23 R. I. 364, at 370.

In *King* v. *Ross*, 21 R. I. 413, 417, the court said: "The rule of *res judicata* as applicable to this case is too familiar for discussion. . . . There is identity of subject matter, of parties and of quality of right." The court accordingly held that the judgment in a prior action ascertaining the next of kin of a decedent was conclusive.

In *Dyer* v. *Cranston Print Works*, 21 R. I. 63, the court having, in a prior suit between the parties, construed certain agreements and conveyances, it was held that the respective rights thereunder were *res judicata.*

For other cases in which the rule of *res judicata* has been applied in Rhode Island, see *Hill* v. *Bain*, 15 R. I. 75, 77; *Hazard* v. *Coyle*, 26 R. I. 361: In *Mills* v. *Allen*, 26 R. I. 177, a finding by a referee was held conclusive as *res judicata*, although a final decree had not been entered in the earlier case.

We are well satisfied that the rule laid down in *Almy* v. *Daniels, supra,* is decisive of this point and is so well settled and well supported by the general current of authority, both in this State and elsewhere, that we have deemed it unnecessary to cite and review the authorities from other states, a great many of which are set forth in the complainant's brief.

The respondents take the further point that *res judicata* must be pleaded in order for the complainant to take advantage thereof. We find that the bill sufficiently sets forth this claim so that the complainant is entitled to the benefit of it; and even if it did not, we should not hestitate to allow an amendment to that effect if necessary.

The respondents further urge that, as no final decree has ever been entered in *Paine* v. *Sackett, supra,* the matter in question has not been finally adjudicated. We can not consent to this proposition, and we find no cases cited by the respondents which go to this extent. Most of the cases cited relate to verdicts, suspended by appeal or other proceedings,

and where no judgment had been entered; but we find no equity case which goes so far as we are asked to go here. Inasmuch as *Paine* v. *Sackett, supra,* was allowed to stand on the amended bill for the several and separate purposes above set forth, and inasmuch as no final determination has ever been reached, at least on one aspect of the case, and perhaps on two aspects, it may be said that the case has never yet been ready for a final decree disposing of the whole case, although it is not disputed that a decree might have been entered long since, overruling the first ground of demurrer, and sustaining the second ground of demurrer in accordance with the opinion. But if such a decree had been entered in ordinary form, it would not necessarily have set forth in full such facts and determinations as appear from a reading of the opinion, and it might still have been necessary to look to the opinion for a statement of the full judgment of the court. The objection is highly technical rather than substantial, and seems to be met by the case of *Mills* v. *Allen,* 26 R. I. 177, 178, where it appears that no final decree in a prior equity suit had been entered, but the doctrine of *res judicata* was applied, in relation to the report of a referee making a finding on a question of fraud.

Furthermore, we should be inclined in this case, if the point were strenuously urged, to do as was done in *Barker* v. *Stowe,* 20 Blatch. (U. S.) 185, where in an earlier equity suit relating to infringement of a patent, on an issue as to novelty, the court decided in favor of the defendant and held that the bill must be dismissed. Afterwards the same plaintiff again sued the same defendant in the same court, in equity, for infringement of the same patent. The defendant in his answer set up, as an estoppel, the former suit. No decree in fact had been entered in it. Proofs were taken in the second suit, in which it was assumed by both parties that there had been a decree in the first suit. At the hearing of the second suit, the plaintiff objected that there had been no decree in the first suit. The court, on the motion of the defendant, then signed and entered a decree in the first suit, and allowed it to be put in evidence on the part of the defendant in the second suit, and held that

it was a bar to the second suit. We should be inclined to grant the same privilege in this case, if possible, rather than be forced to disregard a former determination of our own court on the same precise question, between the same parties, relating to title under the same will.

The foregoing, we think, disposes adequately of the respondent's contention that the opinion of this court, in *Paine* v. *Sackett, supra,* is not to be regarded as *res judicata* so far as this branch of the case is concerned, and we are of the opinion that the question as to the nature of Emma L. Sackett's title under her father's will is *res judicata* and that she took an equitable estate-tail.

(2)   The complainant further contends, in regard to the second question before the court in this case, that the conveyance to him by Emma L. Sackett on the 1st day of October, 1908, vested in him an equitable estate in fee-simple, either at common law, or under chapter 1346 of the Public Laws of Rhode Island, of 1906. Complainant argues, in a most elaborate and learned brief, that there is no necessity to invoke any statute giving the right to bar equitable estates-tail by means of a conveyance in common form, reciting the intention to bar the entail (as provided by our statute), because it has been for many years established by the decisions of the Court of Chancery in England that although the procedure for the barring of entails was applicable technically only to legal estates-tail, yet by analogy it was held in chancery that an equitable estate-tail could be barred in equity precisely as a legal estate-tail could be barred at law, citing numerous cases, among them, *North* v. *Williams,* 2 Ch. Cas. 63 (22 Eng. Rep. Reprint 848); *Wasborne* v. *Downes,* 1 Vern. 440; *North* v. *Champernoon,* 2 Ch. Cas. 78 (22 Eng. Rep. Reprint 855); *Boteler* v. *Allington,* 1 Brown Ch. 73; *Salvin* v. *Thornton,* Amb. 545; *Beverly* v. *Beverly,* 2 Vern. 131; *Wykham* v. *Wykham,* 18 Ves. 395; *Marwood* v. *Turner,* 3 P. Wms. 163, 171; *Robinson* v. *Comyns,* Cas. Temp. Talb. 164; *Brydges* v. *Brydges,* 3 Ves. 120; *Bowater* v. *Elly,* 2 Vern. 344; *Legate* v. *Sewell,* 1 P. Wms. 91; *Woolnough* v. *Woolnough,*

Finche's Pr. Ch. 228; *Turner* v. *Gwinn*, 1 Vern. 41; *Otway* v. *Hudson*, 2 Vern. 583.

The complainant further argues as follows:

" In view of the above cases it can not be open to the slightest question that during the period of at least one hundred years prior to the American Revolution an equitable estate-tail could be barred in the same way as could a legal estate-tail, and it is both interesting and important to notice not only that every method which was devised for the purpose of docking a legal estate was carried over and given effect in equity, but also that equity went even further and recognized modes of barrring such an estate, as by deed or by will, which had never been considered sufficient in a court of law."

The complainant then proceeds to argue further, that, inasmuch as all the legal methods of docking estates-tail at law were followed by analogy in equity in the English courts, the same practice might well have been followed by the courts of this country, and that there is nothing in our laws enacted in relation to this matter, which prevents this court from following and adopting the same practice. He then reviews most elaborately the successive statutes of this State relating to the docking of entails, beginning with Pub. Laws, 1730, p. 138, passed June, 1725, and coming down to Gen. Laws, 1896, p. 654 (ch. 201. § 14).

It is significant that the examination of these statutes nowhere discloses any language applicable to equitable estates, until we come to cap. 201, § 16, Gen. Laws, R. I., 1896. All of the previous statutes on this subject relate solely to legal estates, and there is nothing in their language to indicate any intention to apply their procedure to equitable estates. The complainant has cited no case, from any court of this country, where the doctrine of the English Chancery Court has been applied as a principle of decision, and only one case where it has even been referred to, viz., *Croxall* v. *Shererd*, 5 Wall. (U. S.) 268. This case involved the consideration of an old settlement deed of lands in New Jersey, the construction of which involved such doubt and difficulty and led to such differ-

ent views in the minds of the judges that they expressly refrained from attempting to determine whether it created life-estates with remainders or legal or equitable estates in fee or in tail; and the decision of the case turned largely upon the validity of a certain private act of the legislature which untied all the legal knots and complications and provided for a division of the estate equally between children in fee; it appearing, from the syllabus, that all parties in interest *in esse* at the time were before the legislature, and either asked for the act or consented that it should pass, and that there was no ground or imputation, on any of them, of fraud, indirection, or concealment; that the partition, moreover, was made by disinterested commissioners, was equal and fair, and all parties *in esse* in interest had confirmed it by conveyances and releases mutually made; and the court held this act to be valid; and further held that the peculiar statute of possessions in force in New Jersey availed the defendant under all the facts of the case, and that he had shown himself to be vested with a good title by possession. The case does incidentally refer to the English doctrine that the *cestui que trust* of an estate in equitable fee-tail may bar the entail by deed, saying, p. 281; "He may alien it, and any legal conveyance by him will have the same operation in equity upon the trust as it would have had at law upon the legal estate. The trust like the legal estate is descendible, devisable, alienable and barrable by the act of the parties, and by matter of record. Generally, whatever is true at law of the legal estate, is true in equity of the trust estate." And some few of the English cases cited by the complainant, and above referred to, are cited in the foot-notes. But it is quite clear, from a reading of the whole case, that it was decided on quite other principles, as above shown, and that this reference to the English doctrine regarding the docking of an equitable fee-tail was merely incidental, and was in no way important in the decision of the case, and can not be regarded as an authority for its adoption even by the United States Supreme Court. Complainant admits that he has found no other case in this country where the English doctrine has been followed, and the industry of counsel,

as shown by their elaborate and laborious briefs, leads us to believe that if any such cases were to have been found they would have been laid before us. We therefore are of the opinion that, so far as this country is concerned, the English doctrine has never been followed by any court, and that we must, at least in this State, look solely to statutory enactment to find authority for the barring of an equitable fee-tail.

(3) This brings us to the second point of the decision of this court in *Paine* v. *Sackett*, 27 R. I. 300, p. 305, *et seq.*, where the effect of the Rhode Island statutes in force at the time the will went into effect, and subsequently down to the filing of the amended bill in that case, was considered, and where it is held in substance that prior to the first day of February, 1896, the statutes relating to the barring of entails related only to legal estates and not to equitable estates in fee-tail; and wherein it was further held that after the first day of February, 1896, section 14 and section 15 of chapter 201, Gen. Laws, R. I. 1896, relate only to legal estates-tail, while section 16 and 17 relate to equitable estates-tail "hereafter created" and so furnished no authority for the conveyance of an equitable fee-tail, theretofore created, for the purpose of barring the entail; we regard this portion of the case of *Paine* v. *Sackett, supra,* as relating to the meaning and effect of these statutes, as *res judicata* so far as the statutes in their then form are concerned.

(4) We come then to the consideration of the effect of the amendment of Gen. Laws, 1896, cap. 201, § 16, by Pub. Laws, cap. 1346.

Chapter 1346 of the Public Laws was enacted by our legislature, April 19, 1906, as an amendment to section 16 of chapter 201 of the General Laws, which section read as follows:

"Section 16. Equitable estates-tail hereafter created in possession or remainder and all remainders and reversions expectant thereon, may be barred in the same manner as legal estates-tail and the remainders and reversions expectant thereon."

Chapter 1346 of the Public Laws is to the following effect:

"Section 1. Section 16 of Chapter 201 of the General Laws is hereby amended so as to read as follows:

"'Sec. 16. Equitable estates-tail in possession or remainder and all remainders and reversions expectant thereon, may be barred in the same manner as legal estates-tail and the remainders and reversions expectant thereon; and all conveyances of equitable estates-tail made since January 31, 1896, by deed in common form in which the intention is expressed of barring the entail and reference is made to the specific land by metes and bounds or by other definite description, shall bar the estate-tail and all remainders and reversions expectant thereon.'

"Section 2. This act shall take effect from and after its passage."

The respondents in their brief argued as follows:

"The change in the law consisted in the omission of the words 'hereafter created' and the addition of the clause relating to the effect to be given to certain conveyances made since January 31, 1896. This clause obviously refers only to deeds made between the latter date and the time of the passage of the act, and since the conveyance here was admittedly made since that time, the clause has no bearing on the deed in question."

But since the case was finally argued December 29, 1909, Gen. Laws of 1909 went into effect December 31st, 1909, and in that compilation the enactment above quoted as cap. 1346, Pub. Laws of 1906, appears re-enacted in the same words as § 16 of cap. 252. It is therefore manifest that at this time we must hold that the language of this statute attempting to validate such deeds made since January 31, 1896, is broad enough to cover and include the deed made by Emma L. Sackett to the complainant in this case. We must therefore consider the section in its present form, and are forced to determine whether or not it is constitutional.

The statute in its present form as re-enacted and put in effect on December 31, 1909, is plainly retroactive, and is an attempt on the part of the General Assembly to make effective for the purposes of barring equitable estates-tail, theretofore created

and in existence, deeds, made for that purpose since January 31, 1896, so as to "bar the estate-tail and all remainders and. reversions expectant thereon."

Now it is clear, from a mere reading of the provisions of the will of Daniel Paine hereinbefore quoted at length, that, as was held in *Paine* v. *Sackett, supra,* 27 R. I. 304, not only were equitable estates in fee-tail given to the testator's three children, with contingent cross-remainders to the survivors or their descendants, if either child died without issue; but by the last clause quoted, viz.: "In case of the death of all my said children without issue, they" (the trustees) "shall transfer and convey the estate held by them in trust to my heirs at law according to the statutes of descent and distribution then in force in the State of Rhode Island," a vested remainder is given to heirs at law to be then ascertained. That this latter remainder limited after an estate-tail is a vested remainder, appears to be well settled. 4 Kent's Com. 12th ed. 204; Gray —The Rule against Perpetuities (2nd ed.), § 111; *Moore* v. *Rake,* 26 N. J. L. 574; Tiedemann on Real Property, §§ 385, 397: Tiedemann on State and Federal Control of Persons and Property, *infra.*

Now the question we have here to determine is whether this retroactive legislation here under discussion, inasmuch, as it attempts to cut off all these remainders, is a valid exercise of legislative power, or whether it is in violation of the provisions of section 10, article 1 of our State constitution and of article XIV of the amendments to the constitution of the United States.

Section 10 of article 1 of our State constitution is to the effect that no person "shall be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land." Article XIV of the amendments to the Federal constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Are the interests of persons who are or may be hereafter entitled under these remainders, "property" within the meaning of these provisions?

The complainant strenuously contends that these interests are not such "property," but are more "expectancies," or "possibilities." And in support of his contention the complainant cites a number of cases in which he claims that statutes authorizing an estate-tail to be barred may constitutionally apply to such an estate, although already in existence.

*Riggs* v. *Sally*, 15 Me. 408, was a case in which it was held that a tenant-in-tail, by the provisions of the Massachusetts statute of 1791, c. 61, in relation to entailed estates, which was enacted in the Maine statute of 1821, c. 36, § 4, had the power to defeat the entailment and to convey in fee-simple, although the will was made and approved before the passage of the first act. It should be noted that a legal, and not an equitable, estate-tail was in issue, and that it was assumed by the court, and admitted by counsel, that in 1791, when the will in question was proved, a common recovery was a well established method of barring legal estates-tail; and the court held that the statute was a substitute of a simple method for the more complicated method of a recovery. Such a case can not be controlling in the present one involving an equitable estate-tail, which, up to the time of the passage of this act, could not be barred either by any statutory or common-law proceeding. Furthermore, it is to be noted that no interest of any remainderman or reversioner was brought into consideration in this case, but the question simply related to the right of the tenant-in-tail to bar the heir-in-tail of a legal estate.

*De Mill* v. *Lockwood*, 3 Blatch. (U. S.) 56, was a case where the plaintiffs, four in number, were the children and the only heirs male of Peter De Mill. Anthony De Mill originally owned the land and by will devised the property to his nephew, Joseph De Mill, for life; and after Joseph's death, to Peter and the heirs male of his body. One of the plaintiffs, Thomas A., was born in 1799. In 1798 Peter conveyed to Mary Arnold all the right, title, and interest which he had in the premises, with-

out stating what that right was. There was in the deed a covenant that he had good right to convey the same. Joseph died in 1800. Mary Arnold by her will, in 1800, devised all her right and interest in the premises to "the children of Peter De Mill." She died early in 1801. In October, 1801, Peter Quintard was appointed guardian of the children of Peter De Mill, who had then been born. As such guardian he petitioned the legislature of the state and alleged that his wards were the owners in fee of the premises by devises from Anthony De Mill and Mary Arnold, and prayed for power to sell, for the benefit of his wards, all their right, title, and interest. The legislature granted the authority and declared the estate to be one in fee-simple. At that time the legislature exercised not only legislative but judicial power. The property was sold under this act, and finally, in 1809, conveyed to the defendant, who was in possession up to the time of the suit in 1853. Peter De Mill died in 1852. The court held that the legislature had authorized the conveyance, and that by the conveyance by Quintard as guardian, Thomas A. was divested of all title to the land under the will of Anthony De Mill.

It should be noted that this case relates to a legal, and not to an equitable, estate-tail; that the court regarded Thomas simply as an heir who had but a "mere possibility, a mere expectancy, a mere capability of inheriting," and therefore no vested interest which the legislature could not properly change or destroy. "The legislature," the court further adds, "have a right, at all times, by general law, to change the course of the inheritance and deprive such issue of the capability of inheriting." There is not a word in the opinion with reference to the interests of the reversioner or remainder-man after the termination of the estate-tail, and nothing is said, even by way of dictum, as to how the statute would effect such interests. Moreover, since the sale was made for the benefit of the children and the proceeds of the sale were presumably turned over to their guardian, they in fact received compensation for their interests and would seem to have no just ground of complaint.

*Comstock* v. *Gay*, 51 Conn. 45, was an action for the posses-

sion of land which had been devised to one Asa Comstock in the following words: "I give unto my son Asa Comstock all my real estate after the decease of his mother; and should he not have heirs of his body, then said real estate after his decease to go to my heirs-at-law." Comstock was the father of the present plaintiff, and after issue born, and while tenant-in-tail, he was advised that he owned a fee-simple and thereupon sold the land with covenants of seizin and warranty. Later, however, he discovered that he was only a tenant-in-tail and that he could convey only a life estate in the property. The parties then applied to the legislature, which passed an act validating and confirming the deeds and making good the title of the grantees in fee-simple. The act provided, however, that Asa Comstock should "hold the money or the property received as the consideration of the conveyances by him made as aforesaid, namely, the said amount of $3,700, in trust for parties who might otherwise be entitled to receive the land under said will." The plaintiff was not consulted in regard to the act, and was absent from the State at the time. In this suit he claimed that the act was unconstitutional and void and that the title was in him as the issue in tail. "But in the case before us the party objecting to the validity of the act of the legislature had not at the time a vested interest. His interest was a mere possibility. He had no estate in the premises and it was not certain that he ever would have. Had he died during the lifetime of his father, as his brother Joseph did, no estate would ever have vested in him. Naked possibilities or mere expectancies of this character are not property in the ordinary sense. They cannot be disposed of by will or deed and are not subject to attachment. (*Smith* v. *Pendell*, 19 Conn. 107.) They are, therefore, not property and are not regarded as vested rights beyond legislative control. (*De Mill* v. *Lockwood*, 3 Blatchf. 56.")

It is evident that this case is of little assistance to this court with regard to the statute here under consideration. Nothing is said as to the right of the legislature to cut off the interests of the reversioner or remainder-man after an estate-tail. Moreover, the fact that the legislature provided that a large sum of

money should be put "in trust for parties who might otherwise be entitled to receive the land under said will" (who were the remainder-men), finally disposes of the case as any authority in this case.

*Clarke* v. *Cordis,* 4 Allen (Mass.), 466, does not in any way concern an estate-tail, and only incidentally refers to the several statutes relating to barring entails, and does not in terms deal with any retroactive statute relating thereto.

In *James* v. *Du Bois,* 16 N. J. L. 285, the court refers only briefly to the constitutional point, and explains its holding by stating that the statute relating to estates-tail "only regulates the future descent of property without disturbing the existing and vested rights of any one." The court also points out that the statute was passed in 1784, when the Federal constitution was not in effect. Rights in reversion or in remainder were not considered.

In *Estep* v. *Hutchman,* 14 S. & R. (Pa.) 435, absolutely nothing was said as to statutes providing means for the barring of an estate-tail. The court held that a private act of the assembly authorizing guardians of infant children, the title to whose real estate was vested in the guardian, to convey such estate to a person with whom the parent of the children before his death contracted to sell it, is valid.

In regard to complainant's citations from Cooley, Cons. Lim. 512, Cooley, Cons. Law, 320, 321, McGehee, Due Process of Law, 157, it suffices to say that they are based upon some of the above cited cases, especially upon *Comstock* v. *Gay, supra,* and *De Mill* v. *Lockwood, supra*: all assume that the only rights involved were simply mere expectancies, or naked possibilities, and not one of them says anything as to the rights of remainder-men or reversioners. These latter citations are fully answered and disposed of by the reference hereinafter made to Tiedemann, State and Federal Control of Persons and Property, 622, 623.

The complainant also endeavors to maintain the constitutionality of the act here in question by analogy to acts changing the laws of descent and distribution, imposing inheritance taxes, permitting sale of real estate of minors, changing joint-

tenancy to tenancy-in-common, abolishing curtesy and dower, etc., citing many cases. We are not satisfied that there is any analogy in these cases, whereby the complainant strengthens his contention; and all of these cases rest upon the broad general principle that a mere expectancy or possibility, as that of an heir-at-law, or heir-in-tail while the ancestor is still living, or that of the husband or wife, as to curtesy or dower before the death of the other party, or that of the joint-tenant during the life of other joint-tenant, does not constitute property within the meaning of the constitutional provisions. We find no case, among the many cited by the complainant, which goes to the extent of sustaining any such retroactive statute, as we are here discussing, where all of the elaborate provisions of a trust will, drawn with great care, and with the manifest intent to have the estate in the trustees support the several cross-remainders and the ultimate vested remainder in the heirs-at-law, and which became operative in 1866 at the death of the testator, could be swept away and made of no avail, at the pleasure of either or all of the first beneficiaries.

Complainant also cites the laws of numerous States, wherein he claims that laws have been passed abolishing estates-tail, and applied to estates-tail already in existence, viz.—Alabama, Code of 1907, § 3397: "Every estate tail in real or personal property now or hereafter created becomes an estate in fee simple." Arizona, Bill of Rights, 23 (Rev. Stats. Ariz. 1901, p. 119); California, 2 Kerr's Cyc. Codes, Part 1, p. 685, § 763; Indiana, 2 Burns Ann. Stats, 1908, § 3994; Michigan, 3 Comp. Laws, 1897, § 8785; Minnesota, Laws of 1905, § 3194; New York, 3 Birdseye Rev. Stats, Codes, and Gen. Laws, 1901, p. 3017, § 22; North Carolina, Revisal of Code, § 1578; North Dakota, Revised Code of 1905, § 4763; South Dakota, 2 Comp. Laws of 1908, § 243; Virginia, Code, § 2421; West Virginia, Code of 1906, § 3028; Wisconsin, 1 Statutes of 1898, p. 1544, § 2027.

An examination of the statutes of the thirteen States cited by the complainant is interesting. In two States, Minnesota and Wisconsin, the statute would seem to affect only such estates-

tail as a person shall have become seized of *after its enactment.* In Virginia and West Virginia estates-tail are changed into estates in fee-simple, but it is provided that "every limitation upon such an estate shall be held valid if the same would be valid when limited upon an estate in fee-simple created by technical language." In Arizona and North Carolina estates-tail are abolished generally, and no cases are cited to show that the courts of those States have given the statute a retroactive operation affecting vested interests. In Alabama alone does the statute expressly refer to estates-tail already in existence at the time of its enactment. The complainant has cited no cases determining the constitutionality of this act, and since the act is a re-enactment of a statute passed in 1812, it is entirely improbable that the court will ever be called upon to pass upon the constitutionality of this act. In the six remaining States (California, Indiana, Michigan, New York, North Dakota, and South Dakota), cited on the complainant's brief, the legislatures, though abolishing estates-tail, have made express provision for the protection of remainders after the estates-tail. The New York statute (3 Birdseye Rev. Stats. Codes, p. 3017, § 22) is typical, and is as follows: "Estates tail have been abolished; and every estate which would be adjudged a fee tail according to the law of this state as it existed before the twelfth day of July, 1782, shall be deemed a fee simple; and if no valid remainder be limited thereon a fee simple absolute. Where a remainder in fee shall be limited on any estate, which would be a fee tail according to the law of this state, as it existed previous to such date, such remainder shall be valid as a contingent limitation on a fee, and shall vest in possession on the death of the first taker, without issue living at the time of such death."

We do not find in this examination of the statutes of other States anything of assistance to the complainant's contentions. On the contrary, it would appear, from the care with which remainders are guarded and preserved in the great majority of them, that such interests in remainder are generally regarded as valuable and vested interests in property, of which the owner can not be deprived without his consent by retroactive laws.

We are of the opinion that, as urged by the respondents, the statement of the general principles of law applicable to estates-in-tail, and of the nature of remainders limited thereon, is most logically and satisfactorily set forth in Tiedemann, State and Federal Control of Persons and Property, pp. 622–3, as follows: "To declare that hereafter no estate tail or use shall be created, does not infringe any vested right, either of the vendor or vendee, or any third person in privity with either of them. But the effect would be very different if these statutes were made applicable to the existing estates of the prohibited kind. Whether the estate tail was converted into a fee simple or divided into a life estate in the first taker and a contingent remainder in the heirs of his body, or if the tenant in tail has the power given him to convert the estate into a fee simple by a conveyance, in any one of these three cases of legislation, the application of it to existing estates tail would violate the constitutional prohibition of interference with vested rights. Of course, the heirs of the body have no vested rights, but the reversioner or remainder-man after the estate tail has. Mr. Cooley states that ' in this country estates tail have been generally changed into estates in fee simple by statutes the validity of which is not disputed.' If the reversion or remainder after an estate tail be a vested right, and without exception the recognized authorities on the law of real property are agreed that these interests are vested rights, the conclusion is irresistible, that laws, changing estates tail into fees simple, are unconstitutional if applied to estates-tail already created, when the laws were passed. Mr. Cooley says: ' No other person (than the tenant in tail) in these cases has any vested right, either in possession or expectancy, to be affected by such change; and the expectancy of the heir presumptive must be subject to the same control as in other cases.' In a note to the above statement he says that 'the exception to this statement, if any, must be the case of a tenant in tail after possibility of issue extinct; where the estate of the tenant has ceased to be an inheritance and a reversionary right has become vested.' There cannot be any doubt whatever that the conversion of an estate tail after

possibility of issue extinct into a fee simple would be in viola-
tion of the vested rights of the reversioner or remainder-man.
For the estate tail after possibility of issue extinct is but a life
estate.    But in respect to the matter of being a vested right,
there is no difference between the remainder or reversion after
an ordinary estate tail, and one after an estate tail after possi-
bility of issue extinct.    There is no uncertainty as to the title
in either case.    The failure of issue in both simply determines
when the reversion or remainder shall take effect in possession,
and the uncertainty or impossibility of ever enjoying the estate
in possession never makes a remainder contingent.    It is true
that in England the remainder after an estate was liable to be
defeated by a common recovery when suffered or instituted by
the tenant in tail for the purpose of cutting off the entail.
And if common recoveries or some other mode of barring the
entail had been previously recognized in this country, the
remainder after the estate tail would be properly considered a
contingent interest instead of a vested right, and could be fur-
ther regulated by statute."

The respondents cite the case of *Ream* v. *Wolls*, 61 Ohio St.
131; this was a case in which it appeared that in 1854 Jonathan
Ream, the father of the plaintiff, Sarah J. Ream, and grand-
father of the other plaintiffs, died testate, seized in fee of the
premises in controversy.    By his will he left a life estate in the
land to his widow, Sarah T. Ream, and the remainder in fee to
his children, the survivors and representatives of whom are
these plaintiffs.    In his will his wife was named as guardian of
the children.    In 1864, Sarah Ream, the wife and life tenant,
commenced an action in the court of common pleas to sell the
land, her life estate and the remainder of the children, ostensibly
under the act of 1859 (1 S. & C. 550), which provided for the
sale or lease of estates-tail and life estates in certain cases.
In that action the property was sold..    The reason for the
sale was stated to be that it would be for the benefit of the
petitioner, and do no substantial injury to the remainder-men.
Defendant claims title through the purchase at that sale.    In
1890, Sarah Ream, the life tenant, died and this suit was brought

by the children entitled as remainder-men. The court held that the sale was void, since if the act of 1859 applied to estates existent at the time of its passage, it was unconstitutional as a violation of the right of private property. The court, on p. 143, in this case, says as follows: "We are of the opinion that the judgment of the circuit court should be reversed. There was no authority for the court to make the order under which the sale was made. Ostensibly the sale was ordered in a proceeding under the act of 1859, providing for the sale or lease of estates tail in certain cases, 1 S. & C. 550. But the estate in this case was created before that act took effect, and can derive no aid whatever from it. It stands as if such statute had never been passed. *Gilpin* v. *Williams*, 25 Ohio. St., 283, It was here held that the statute is not a remedial one, and to give it a retroactive effect on existing estates would impair vested estates in remainder and reversion, and hence impair the right of private property, which, under our constitution, cannot be done. We suppose that no one would assert that, prior to the enactment of the statute, a vested remainder could, at the suit of the life tenant, have been divested by the judgment of a court, simply for the purpose of making a better investment for that tenant, although it would work no substantial injury to the remaindermen. Whether it would or would not be to the injury of the latter estate, is not the question. In *Gilpin* v. *Williams*, McIlvaine, J., in replying to the suggestion that it would be no injury to the owner of the future estate, that it would simply change it in kind, and when so changed would remain to the same uses, said: 'The suggestion is of no avail. The proceeding seeks to divest them (the remaindermen) of their estate in the land; and it is that estate, their property in the land, which is declared to be inviolate; and further, that ' to enforce a sale would be nothing more and nothing less than the appropriation of the estate of one person for the benefit of another.'"

The respondent also cite the case of *Brevoort* v. *Grace*, 53 N. Y. 245; this was a case where it appeared that the will of L. devised one-half the income of certain premises to his wife

as long as she should remain his widow, the residue of the income to his daughter E., during her life, the remainder to her issue in fee. In case of her death without issue or children of issue surviving, then to such of the children of his brother, J., as should be living at the time of the testator's death, and to their heirs, etc. The legislature passed an act (Laws, 1872, c. 23) authorizing the Supreme Court to order a sale in fee-simple absolute, of the premises upon the petition of E. and her issue and directing the mode of procedure. At that time E. had one child living who was of age. All the children of J. had died leaving children, a portion of whom were adults. It was held that said adult children had an estate in expectancy contingent upon the death of E. without issue surviving, and hence the statute, so far as it authorized the transfer of such an interest without their consent, was unconstitutional.

In this latter case, the court, on p. 259, refuses to recognize any distinction between vested and contingent remainders, considered as substantial rights of property, and says: "It is insisted by the counsel for the respondent that the act in question should be sustained, for the reason that some of the heirs are infants, and that the legislature has the power to authorize the sale of the interests of these infants. But this does not confer the power to authorize a sale of the interests of the adults without their consent.

"It is further insisted that although the legislature may not have the power to authorize the sale of an estate in possession, or a vested estate in expectancy of an adult without his consent, yet it can authorize the sale of a contingent estate in expectancy. I can see no reason for the distinction. An owner *sui juris* is equally competent to determine and manage for himself in the one case as in the other. The foundation of the power of the legislature to act in behalf of any owner is the want of capacity to act for himself, and this reason no more extends to the case of a contingent than to a vested expectant estate. The question as to whether the interests are vested or contingent is not material and will not be discussed.

"It is obvious that the fact that Henry Brevoort being a

party can have no bearing upon the power of the legislature to sell without their consent the interest of the heirs of the testator's brother John. For this purpose he no more represents and has no more power to affect their rights than a stranger to the title. He may bind his own rights by his acts, but not those of others."

Now while the two cases last cited do not deal with equitable estates in fee-tail, nor with remainders limited thereon, they do quite satisfactorily to our minds show that the rights of remainder-men in real estate, whether vested or contingent, are property rights which can not be cut off by retroactive legislalation without the consent of the remainder-men.

We are of the opinion that, in this case, the rights of the respondent Louisa Paine Tingley in contingent remainder under her grandfather's will, as well as the rights of the infant respondent Elizabeth Hazard, grandchild of Emma L. Sackett, in like contingent remainder (the rights of said infant being especially confided to our protection), are such valuable and substantial rights of property that retroactive legislation, such as we are here discussing, cutting off those rights, is unconstitutional and void. We are also of the opinion that the ultimate remainder to the heirs-at-law of Daniel Paine, "in case of the death of all my said children without issue," is a vested remainder, which can not be cut off by retroative legislation, and that, as regards those interests in remainder, this legislation is unconstitutional and void.

Our decision therefore is, that so far as Chap. 1346, Pub. Laws, passed April 19, 1906, and the re-enactment thereof which went into effect December 31, 1909, and is now in force as § 16, cap. 252, Gen. Laws of 1909, authorizes or attempts to authorize the barring of equitable estates-tail, and all remainders and reversions expectant thereon created and in existence prior to the passage thereof, said acts are unconstitutional and void as being in violation of the provision of section 10, of article I of the constitution of the State of Rhode Island, and of article XIV of the Amendments to the constitution of the United States.

It follows, then, that the deed made to the complainant by Emma L. Sackett, set forth in the bill, dated October 1, 1908, is ineffectual to bar the entail and the remainders limited thereafter; and that therefore the trustees under the will are not bound to convey her portion of the trust estate to the complainant; and that the bill must be dismissed.

It is ordered that the cause be remanded to the Superior Court, with direction to enter its decree dismissing the bill with costs.

BLODGETT, J., concurring. I concur in the dismissal of this bill, upon grounds independent of the decision of this court in *Paine* v. *Sackett, supra,* and which are based upon the reasoning of the majority opinion concerning the effect of the enactment of cap. 1346, Pub. Laws, passed on April 19, 1906. It is not necessary to determine whether the will of Daniel Paine created an equitable fee-tail or an equitable life estate as claimed by certain respondents. In the former case the statute is ineffectual to authorize a barring of the entail, and upon the latter construction the complainant is clearly not entitled to the conveyance desired. It follows that it is also unnecessary to determine whether the decision in *Paine* v. *Sackett, supra,* is or is not *res judicata.*

SWEETLAND, J., concurring. I concur in the final determination of the court dismissing the bill and in the determination and the reasoning of the court, with regard to the unconstitutionality of Chap. 1346, Public Laws, passed April 19, 1906, so far as it authorizes or attempts to authorize the barring of equitable estates-tail and all remainders and reversions expectant thereon, created and in existence prior to the passage thereof.

I can not concur in the conclusion of the court that the opinion of the Appellate Division of the Supreme Court in the case of *Paine* v. *Sackett,* 27 R. I. 300, is conclusive in the present case on the question as to the nature of the interest of Emma L. Sackett on the first of October, 1908, under the will

of Daniel Paine, under the principle of *res judicata.* That question in the case at bar can not be determined upon the principle of *res judicata.* If the determination of the Appellate Division of the Supreme Court in *Paine* v. *Sackett,* as to the nature of the estates given by the will of Daniel Paine to his three children is sound, then this court should affirm it, and that phase of this case would be determined; for, as yet, there has been no final determination of that question. If, on the other hand, this court should find, as in my opinion it would be obliged to do, that by the terms of Daniel Paine's will equitable estates in fee-tail were not given to the three children of the testator, then the court should not hesitate to disregard the conclusions of *Paine* v. *Sackett,* The decision of that particular question was not necessary to the determination of *Paine* v. *Sackett.* If the learned judge, who wrote the opinion in that case, had been forced by the nature of the issues before him to give to that particular question the painstaking and exhaustive research which has been given to it by the counsel in the case before us, the benefit of whose labor this court has received, I am convinced that he would have come to a different conclusion. Also, I do not think it would be possible, in view of the great weight of authority and reason which has been presented to it, contrary to *Paine* v. *Sackett,* that this court could now agree with the conclusions reached in that case. The doctrine of *res judicata* presents no obstacle to the present consideration of that question by this court. At the time of the opinion in *Paine* v. *Sackett* the case was before the Appellate Division on demurrer to the bill. The said division then had original jurisdiction in equity causes. The court gave as its written opinion that the demurrer should be overruled. No decree has ever been entered in said cause upon said opinion. Even if an interlocutory decree had been entered, overruling said demurrer, such decree would in no sense have been a final decree in the cause, which could be pleaded in bar to another suit. But no decree has been entered, and until one is entered in the cause, there is no assurance that the opinion in *Paine* v. *Sackett* ever will be embodied in a decree.

"The weight of authority supports the view that it is not the finding of the court or the verdict of the jury rendered in an action that concludes the parties in subsequent litigation, but the judgment entered thereon, for the verdict when rendered, is under the control of the court in which the action was tried, and may be set aside for good reason, and hence it is necessary, in order to support the plea of *res judicata*, that a judgment, decree or final order should have been actually rendered and entered in the prior action or suit." A. & E. Ency. of Law, vol. 24, 792.

In *Hughs* v. *Washington*, 65 Ill. 245, the court said, p. 249: "The decree is inchoate until it is approved by the chancellor and filed for record, or shall be recorded, which answers to the passing and entering it, in the English court. The mere oral announcement of the chancellor of his decision and of the grounds upon which it is based, or the reducing them to writing, is no more than the minutes taken in the English practice. The whole matter is completely under the control of the chancellor until the final decree has been filed or recorded. Until that time, he may alter, amend, change, or even disregard all that he had said in his minutes; and if, upon further reflection, he became satisfied his conclusions were wrong, it would be his duty to reverse his announcement and to decree as he was convinced the equities of the case required; or if, upon further reflection, he should doubt the correctness of his conclusion, he has the undoubted right to order a rehearing on his own motion at any time before he has passed the decree and it has been filed for record, or has been spread upon the record. But after that is done, the whole matter is beyond his control, unless it be on a bill of review, or a bill to impeach the decree or some such subsequent proceeding. It is then and not till then, that it is the decree of the court, and is *res adjudicata*."

When the Superior Court was established and original equity jurisdiction was given to it, the cause *Paine* v. *Sackett* was transferred to the Superior Court, and under the provisions of section 1250 of the Court and Practice Act that court was given all the former jurisdiction of the Appellate Division over

said cause. Included in that jurisdiction was the power to enter a decree in accordance with said opinion, or, for cause satisfactory to it, to refuse to enter it. The Superior Court would undoubtedly hesitate to enter a decree in conflict with the opinion of the Appellate Division previously rendered in a cause transferred to it from said division. It would probably only do so, after a rehearing, when some obvious mistake of law was shown to it, but it has all the power to reconsider this opinion before it enters a decree upon it that the Appellate Division had. As to that pending equity cause the Superior Court succeeded to all the jurisdiction of the Appellate Division, in the first instance, with jurisdiction in this court upon appeal after the entry of final decree.

If this court, upon further consideration of the question, should be compelled to overrule *Paine* v. *Sackett,* the Superior Court would follow the opinion in this case if it was called upon to enter a decree upon the said demurrers. If the final decree in *Paine* v. *Sackett* should be in conflict with the opinion of this court, as to the nature of the estates under consideration, that case would undoubtedly soon be before us upon appeal. The objection of a second appeal upon the same question in the same case could not be raised against such appeal, for the opinion in 29 R. I. was by the appellate division having original jurisdiction in equity causes, to which jurisdiction the Superior Court succeeded, and was not an opinion in appellate proceedings. The court therefore need not hesitate to come to a conclusion different from that expressed in *Paine* v. *Sackett* for the reason stated in its opinion. With the right to ask for a rehearing in the Superior Court, and with the right to appeal from the final decree, counsel will undoubtedly see to it that the court is not allowed to remain long in the absurd position suggested "of holding that the very same clause of the identical will in question in the two cases, gave to one beneficiary a mere life estate and to another an equitable estate-tail." The two cases would soon agree in accordance with correct legal principles, rather than be made harmonious in error.

Upon these considerations I conclude that the opinion in *Paine* v. *Sackett* is not *res judicata* in the case at bar.

The case cited in the opinion can hardly be taken as authority against the proposition that a matter is not *res judicata* until a final judgment or decree has been entered. *Mills* v. *Allen*, 26 R. I. 177, does not support the doctrine that the report of a referee, unconfirmed by a decree of court, can, under ordinary, circumstances, be regarded as *res judicata*. In *Mills* v. *Allen* the parties, by a stipulation of reference in the prior suit, agreed that the decision of the referee should have the same effect as a final decree in the suit in equity. In the reported case the court held the parties to their agreement and considered the report as of the same effect as a final decree, and hence as *res judicata*, because the parties had stipulated that it should be.

The court cites a procedure in *Barker* v. *Stowe*, 20 Blatch. (U. S.), 185, where both parties had for a time proceeded upon the assumption that a decree had been entered in a former case, which was ready for final decree. Upon the question being raised, the court then signed and entered a decree in the prior suit. In the opinion in the case at bar the court says: "We should be inclined to grant the same privilege in this case, if possible, rather than be forced to disregard a former determination of our own court on the same precise question, between the same parties, relating to title under the same will." It is not clear by what procedure this court could at this time enter a decree in an equity cause pending in the Superior Court. But if its authority to so act were plain, why should this court wish to do so? If the opinion in *Paine* v. *Sackett* is not *res judicata*, why should this court take steps to make it so, or why is such action necessary for the determination of the case at bar? The entry of the decree is not an essential pre-requisite to the re-affirmance, in this case, of the doctrine set out in *Paine* v. *Sackett*. For if we approve the opinion in *Paine* v. *Sackett* we can follow it, whether it be *res judicata* in this case or not. If we do not approve of it, why should we give the authority of a decree to an opinion which we do not approve in order that we may be bound by it?

Upon these considerations I can not assent to the reasoning of the court upon the question of *res judicata.*

*Theodore Francis Green, pro se ipso.*
*Frederick W. Tillinghast,* of counsel.
*Gardner, Pirce & Thornley,* for respondents.
*William W. Moss, Charles R. Haslam, William H. Camfield,* of counsel.